In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 08-8009

QUINTEN SPIVEY, individually
and on behalf of a class,

*Plaintiff-Respondent*,

*v.*

VERTRUE, INCORPORATED,

*Defendant-Petitioner*.

_____

Petition for Leave to Appeal from the United States
District Court for the Southern District of Illinois.
No. 07-CV-0779-MJR—**Michael J. Reagan**, *Judge*.

_____

SUBMITTED MAY 16, 2008—DECIDED JUNE 11, 2008

_____

Before EASTERBROOK, *Chief Judge*, and ROVNER and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Quinten Spivey filed suit
in state court, seeking to represent a class of persons
who do business with Vertrue, a marketer that offers
discounts to customers who use its services. Spivey
maintains that Vertrue "systematically" submits unautho-
rized charges. Spivey proposed to represent a class of
persons whose credit cards had been charged without
authorization through 22 of Vertrue's programs.

Vertrue removed the proceeding to federal court under
28 U.S.C. §1453, a part of the Class Action Fairness Act,

which allows removal when the class action could have been commenced initially in federal court under 28 U.S.C. §1332(d). Spivey moved to remand, contending that one requirement of §1332(d)—that the amount in controversy exceed $5 million, see §1332(d)(2)—is unsatisfied. The district judge agreed and remanded the case. 2008 U.S. Dist. LEXIS 28730 (S.D. Ill. Apr. 8, 2008). Vertrue has filed a petition for leave to appeal, a form of review authorized by §1453(c)(1). Vertrue's lawyer mailed the petition on the seventh day after the district court's remand order, and the petition reached this court, and so was "filed," see Fed. R. App. P. 25(a)(2), on April 18, 2008, the tenth day after the district court's order. Spivey contends that this is too late and that we lack jurisdiction.

Section 1453(c)(1) provides that "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order." The petition was timely under this language. April 18 is "not less than 7 days"—in other words, is more than 6 days—after April 8. (Weekends are excluded from 7-day periods by Fed. R. App. P. 26(a)(2), but "not less than 9 days" has the same application to these events as "not less than 7 days".)

Spivey's argument rests not on the statutory text but on the proposition that the law cannot mean what it says. Someone must have set out to write "not more than 7 days" or "not later than 7 days" or "within 7 days"—because time limits for appeals always set the last date allowed for action, rather than the earliest time to file something—but came up with "not less than 7 days" instead. No one noticed the gaffe (or the misuse of the word "less"

when correct diction requires "fewer") before the statute was enacted. The garble has attracted considerable attention by both judges and law reviews, but Congress has not enacted a technical-corrections bill. See *Estate of Pew v. Cardarelli*, 2008 U.S. App. LEXIS 10269 at *6–7 (2d Cir. May 13, 2008); *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006); *Amalgamated Transit Union v. Laidlaw Transit Services, Inc.*, 435 F.3d 1140, 1146 (9th Cir. 2006), rehearing en banc denied, 448 F.3d 1092 (9th Cir. 2006) (Bybee, J., and five other judges dissenting); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1093 n.2 (10th Cir. 2005); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1326 (11th Cir. 2006); David L. Horan, *Appealing Remand Orders Under the Class Action Fairness Act*, 8 J. App. Practice & Process 281 (2006); Adam N. Steinman, *"Less" is "More"? Textualism, Intentionalism, and a Better Solution to the Class Action Fairness Act's Appellate Deadline Riddle*, 92 Iowa L. Rev. 1183 (2007).

*Pew*, *Morgan*, *Laidlaw Transit Services*, *Pritchett*, and *Miedema* all say that "less" should be read as "more," because the latter word best fits with the norm in appellate deadlines and the likely goal of the legislature—to compel prompt action that will resolve with dispatch the question which court will conduct the litigation. Section 1453(c)(2) requires the court of appeals to makes its decision (if it accepts the appeal) "not later than 60 days after the date on which such appeal was filed" unless an extension is granted under another subsection. See *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675 (7th Cir. 2006). There's not much point in directing the court of appeals to make a swift decision, if the aggrieved party can take forever to appeal—and, if "less" really means "less," then forever is how much time the party displeased by the remand can take, as far as §1453(c)(1) is concerned.

Congress sometimes enacts cooling-off periods, but §1453(c)(1) lacks the deadline that usually accompanies such a period. See, e.g., *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989).

That Congress has written a deadline imprecisely, or even perversely, is not a sufficient reason to disregard the enacted language. So the Supreme Court held in *Dodd v. United States*, 545 U.S. 353 (2005), and *United States v. Locke*, 471 U.S. 84 (1985). See also, e.g., *Lamie v. United States Trustee*, 540 U.S. 526, 533–39 (2004). Turning "less" into "more" would be a feat more closely associated with the mutating commandments on the barn's wall in *Animal Farm* than with sincere interpretation. (Ludwig Mies van der Rohe, the architect who designed the courthouse in which the Seventh Circuit sits, adopted "less is more" as his motto, but this credo of Bauhaus design did no violence to any enacted text.)

To the extent that our colleagues in other circuits hold that a petition filed within seven days of the district court's order should be accepted, rather than thrown out with instructions to submit another once a week has passed, we concur. Whether a petition filed within a week after the remand is timely was the question actually presented in those appeals. An affirmative answer tracks Fed. R. App. P. 4(a)(2), which says that a premature notice of appeal remains on file and springs into effect when the decision becomes appealable. It makes sense to use the same approach for a premature permission for leave to appeal.

But to the extent that language in other circuits' opinions implies that they would deem a petition filed on the eighth day (or, here, the tenth) jurisdictionally and thus irreparably late, we do not concur. Even judges who,

like the dissenters in *Locke*, think that a statute should be construed to prevent litigants from being sand-bagged by misleading language, would not pull the rug out from under a litigant who relied on the enacted text. None of the other circuits whose opinions we have cited dismissed a petition as untimely. Doubtless many Members of Congress wanted a short deadline for appeals, but legislative history can not justify reading a statute to mean the opposite of what it says. See, e.g., *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005); *In re Sinclair*, 870 F.2d 1340 (7th Cir. 1989). Legislative history may help disambiguate a cloudy text by showing how words work in context; it does not permit a judge to turn a clear text on its head.

Vertrue's lawyers knew that some courts have read "less" to mean "more". They tried to avoid the problem by straddling the deadline. They mailed the petition on the seventh day, expecting it to reach the court soon thereafter. Then if we took "less" to mean "less" the petition would be accepted even though it had been mailed on the seventh day; and they submit that if we take "less" to mean "more" then the mailing should suffice. Spivey says that Rule 25(a)(2), which says that a notice of appeal or petition for leave to appeal is filed when received, requires us to ignore the mailing date and thus prevents Vertrue's straddle from working. Perhaps so. But this just illustrates why it would be foolish, as well as counter-textual, to throw out of court a petition that is timely under the statute actually enacted. Whatever scope courts may have to accept petitions or appeals that meet the legislative objective of prompt filing (and could be re-filed in a few days agreeably to the statute's text), there is none for rejecting a petition or

appeal that is timely under the enacted law. Litigants and lawyers always should be safe in relying on a statute's actual language.

To the possibility that this gives litigants forever to appeal, and thus interferes with the objective of ascertaining the correct forum as quickly as possible, we say: No way. The open-ended "not less than 7 days" means that there is no terminal date for appeal. And the Federal Rules of Appellate Procedure cover the possibility that some laws or rules allowing interlocutory appeals omit deadlines. Rule 5(a)(2) says that, when there is no other limit, a petition for permission to appeal must be filed "within the time provided by Rule 4(a) for filing a notice of appeal." That time is 30 days. (If the United States, or a federal officer or agency, is a party, the limit is 60 days—but then removal would be possible without regard to the Class Action Fairness Act.) Reading §1453(c)(1) to mean what it says thus does not authorize indefinite delay. Although it may allow a party 23 days more than the authors anticipated, our reading avoids nasty surprises for litigants who believe—and are entitled to believe—that courts will honor the language in the enrolled bill that the President signs. Vertrue's petition is timely.

Vertrue calculated the amount in controversy at more than $5 million because its billings, for 4 of the 22 programs in Illinois alone, come to almost $7 million. (An affidavit to that effect has been filed in the district court.) The district judge thought this insufficient because Vertrue did not concede that more than $5 million in charges was unauthorized. Yet the statute does not make federal jurisdiction depend on how much the plaintiff is sure to recover. The question is what amount is "in controversy".

See *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005). The complaint alleges that Spivey's credit card was charged without authorization and that Vertrue's practices are "common to all Class Members". The complaint also alleges that making unauthorized charges is a standard practice at Vertrue. Spivey's allegations thus put into "controversy" the propriety of all of Vertrue's charges, and the complaint demands refunds for all unauthorized charges.

*Brill* lays out the protocol for removals under the Class Action Fairness Act. The removing party, as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million. This is a pleading requirement, not a demand for proof. Discovery and trial come later. A removing defendant need not "confess liability in order to show that the controversy exceeds the threshold." 427 F.3d at 449. "[T]he removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands. . . . The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks*." Ibid*. (emphasis in original).

Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, cf. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much. See *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938); *Normand v. Orkin Exterminating Co.*, 193 F.3d 908 (7th Cir. 1999); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). The district judge did not find that recovery of

more than $5 million is impossible. Instead the judge said that Vertrue's failure to admit what portion of all charges was unauthorized makes it uncertain how high the judgment (if any) will be. Uncertainty differs from impossibility, the standard that *St. Paul Mercury Indemnity* adopted for determining whether a litigant's estimate of the stakes may be rejected.

We grant Vertrue's petition and accept the appeal. Vertrue need not file a notice of appeal but must pay all applicable fees. See Fed. R. App. P. 5(d). The decision is reversed and the case is remanded for adjudication on the merits in federal court.