# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 2, 2009

Charles R. Fulbruge III
Clerk

No. 09-30121

ADMIRAL INSURANCE CO.,

Plaintiff - Appellant Cross-Appellee

v.

DONALD W. ABSHIRE; BETTY JOAN NIX BUZZANCA; JESSE CHARLES ADAMS; GESELE DIAMOND ADAMS; DARROW A. ADAMS, ET AL.,

Plaintiffs - Appellees Cross-Appellants

v.

STATE OF LOUISIANA, THROUGH THE OFFICE OF FINANCIAL INSTITUTIONS; STATE OF LOUISIANA, THROUGH THE OFFICE OF RISK MANAGEMENT,

Defendants - Appellants Cross-Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before WIENER, STEWART, and CLEMENT, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Admiral Insurance Company ("Admiral") and Defendant-Appellant State of Louisiana, through the Office of Financial Institutions and through the Office of Risk Management (collectively, "Louisiana") appeal from the order of the district court remanding this case to state court. Louisiana claims that the Plaintiffs-Appellees (collectively, "Abshire

et al.") commenced this putative class action – in which the proposed class includes at least 100 plaintiffs, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs – after the effective date of the Class Action Fairness Act of 2005 ("CAFA"),[1] entitling Louisiana to removal. Abshire et al. disagree, contending that they commenced this suit long before CAFA's effective date. They also cross-appeal the district court's denial of fees and costs associated with seeking remand. We affirm the district court's remand of the case to state court and its denial of fees and costs to Abshire et al.

## I. FACTS AND PROCEEDINGS

Abshire and the other plaintiffs purchased life insurance policies, annuities, and corporate notes from three Louisiana companies: Public Investors Life Insurance Co. ("PILCO"), Public Investors, Inc. ("PI"), and Midwest Life Insurance Co. ("MLI"). After all three companies failed, Abshire et al. sued Louisiana, alleging negligent, intentional, and criminal acts (regulatory and otherwise) that they claim contributed to these failures. A total of 1,383 plaintiffs were named as parties in three petitions[2] filed during the early 1990s in two different Louisiana courts. These actions were ultimately consolidated in Louisiana's 19th Judicial District Court for the Parish of East Baton Rouge (the "19th JDC").

After prolonged discovery and writ applications, and an earlier effort by Louisiana to remove to federal court, Abshire et al. filed an eighth amended complaint on March 24, 2003, which added claims against Louisiana's excess insurance carriers — like Admiral — and repleaded several claims. Then, as the most recent trial date approached in 2007, an advisory opinion from the Ethics

---

[1] Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

[2] Louisiana law refers to a complaint as a petition; they serve the same purpose. *See* LA. CODE CIV. PROC. ANN. art. 854 (2008).

Advisory Service Committee of the Louisiana State Bar Association determined that Abshire et al.'s attorneys would violate the Rules of Professional Conduct if they tried or settled the claims of plaintiffs with whom they had lost contact, using only the powers of attorney that these plaintiffs had executed at the time of retainer. Abshire et al.'s attorneys therefore filed motions to withdraw as to the 243 plaintiffs with whom they had lost contact.

These ethics and communication issues were hampering efforts to settle, so the 19th JDC, which believed that the parties could benefit from mediation, granted Abshire et al. leave to amend their complaint a ninth time to seek class certification. That court concluded, and Abshire et al.'s attorneys apparently agreed, that only class certification could give the attorneys the authority needed to participate in mediation and to settle the case if possible.[3]

Abshire et al. filed the ninth amended complaint on May 30, 2008. It defined the proposed class as:

> All persons or entities in the United States who filed suit against the State of Louisiana and/or its Department of Insurance or Office of Financial Institutions for damages caused by the State's conduct in connection with the failure of [the three companies], and whose claim was consolidated into Civil Action No. 377,713 or No. 412,265.
>
> . . . .
>
> . . . Excluded from the Class are any persons or entities to the extent their claims in Civil Action No. 377,713 or No. 412,265 have been resolved by a final, unappealable judgment, including those claims dismissed as a result of the rulings of the United States District Court, Western District of Louisiana, No. 06-1368.

In the ninth amended complaint, Abshire et al. also sought to recoup their "costs of suit, including reasonable attorneys' fees as provided by law." The

---

[3] For discussions of the problems with resolving dispersed or complex, multiparty litigation, the utility of the class action device, and CAFA, see Edward F. Sherman, *The MDL Model for Resolving Complex Litigation If a Class Action Is Not Possible*, 82 TUL. L. REV. 2205, 2206-09 (2008).

eighth amended complaint had requested "[j]udgment against the Defendants jointly, severally, and in solido for attorneys' fees, judicial interest, costs, and all expenses of these proceedings and for any and all other general equitable relief."

Other case management problems inherent in such lengthy litigation arose during the 17 years that this suit has been pending in state court. For example, a number of plaintiffs have died. The 19th JDC allowed ex parte substitutions of survivors until Louisiana objected. That court then entered an order in 2004 conditionally dismissing the claims of the deceased plaintiffs unless counsel for Abshire et al. made proper substitution requests. Although the record is unclear on the point, it appears that at least five of the deceased plaintiffs had no survivor who could be substituted in 2004, so their claims presumably were dismissed. Louisiana claims that the same held true for at least 16 deceased plaintiffs at that time.

In addition to hearing the motions practice regarding substitutions for deceased plaintiffs, the 19th JDC dismissed the claims of all 281 plaintiffs who were only insureds or beneficiaries of a PILCO, PI, or MLI life insurance policy or annuity. These dismissals, as Louisiana concedes, are final and unappealable. The same order also held that "[a]ll rights possessed by any plaintiff in this litigation are preserved, and shall not in any way be affected by this order, save for those rights a plaintiff may possess as an insured or beneficiary under a life insurance policy or annuity." Louisiana contends that this portion of the order related to 219 "dual-capacity plaintiffs," each of whom was both (1) an insured or a beneficiary and (2) owned an investment at issue, the claims relating to which were not dismissed. Louisiana argues that the order is not final and unappealable as to those 219 dual-capacity plaintiffs because (1) those plaintiffs were not fully dismissed and (2) the order was not certified as a final judgment pursuant to Article 1915(B)(1) of the Louisiana Code of Civil Procedure for purposes of an appeal. These two additional

management issues — the substitution problems arising out of the deaths of some of the plaintiffs and the management of the "dual-capacity" plaintiffs' claims — are part of Louisiana's argument that, by seeking class certification for the first time, the ninth amended complaint commenced a new suit for purposes of CAFA.

Immediately after Abshire et al. filed the ninth amended complaint, Louisiana again removed the action to federal court, this time claiming that, under CAFA, subject-matter jurisdiction exists over Abshire et al.'s putative class action. Abshire et al. do not contest that if CAFA applies, the case satisfies CAFA's minimum-diversity and amount-in-controversy requirements. Instead, Abshire et al. sought remand on grounds that (1) this action was not "commenced" after CAFA's effective date (February 18, 2005), so CAFA is inapplicable, and (2) if CAFA applies, at least one mandatory exception to federal jurisdiction under CAFA requires remand. The magistrate judge concluded that the instant action commenced prior to CAFA's effective date and recommended that the case be remanded to state court. Because of that conclusion, the magistrate judge's report and recommendations did not address the two CAFA exceptions to jurisdiction that are presented in this appeal, namely, the "local controversy" and "primary state actor" exceptions.

Abshire et al. also requested that, pursuant to 28 U.S.C. § 1447(c), attorneys' fees and costs associated with seeking remand be awarded, arguing that Louisiana's attempt to remove the case was "objectively unreasonable." The magistrate judge determined that even though Abshire et al. prevailed on their motion to remand, Louisiana had not acted unreasonably because case law in the area was unsettled at the time of removal. The district court adopted the magistrate judge's report and recommendations in full and remanded the case to state court.

Both Louisiana's notice of appeal of the district court's remand order and Abshire et al.'s notice of appeal of the denial of attorneys' fees and costs were timely filed pursuant to 28 U.S.C. § 1453(c)(1).[4] We granted permission to appeal and cross-appeal. As permitted by § 1453(c)(3)(A), all the parties agreed to a 120-day extension of 28 U.S.C. § 1453(c)(2)'s sixty-day time limit to "complete all action on [the] appeal."

## II. ANALYSIS

A. *The Remand Order*

1. *Standard of Review*

We review de novo a district court's order remanding a case to state court.[5]

2. *Merits*

CAFA applies to "'any civil action commenced on or after'" February 18, 2005.[6] It does not apply retroactively.[7] We must therefore determine whether

---

[4] The requirement that the petition be filed "not *less* than 7 days after entry of the order" granting or denying remand has been interpreted, counter-textually, to read "not *more* than 7 days." *E.g.*, *Estate of Pew v. Cardarelli*, 527 F.3d 25, 27-28 (2d Cir. 2008) (collecting Third, Ninth, Tenth, and Eleventh Circuit cases). *Contra Spivey v. Vertrue, Inc.*, 528 F.3d 982, 984 (7th Cir. 2008) (Easterbrook, J.) ("Turning 'less' into 'more' would be a feat more closely associated with the mutating commandments on the barn's wall in Animal Farm than with sincere interpretation."). Even if we were tempted to rewrite a statute to mean exactly the opposite of its text, we resist that temptation, choosing instead to join the Seventh Circuit by concluding that this appeal was timely filed, even though the petition was filed fewer than seven days after the remand order. *See Spivey*, 528 F.3d at 984 ("To the extent that our colleagues in other circuits hold that a petition filed within seven days of the district court's order should be accepted, rather than thrown out with instructions to submit another once a week has passed, we concur. . . . An affirmative answer tracks Fed. R. App. P. 4(a)(2), which says that a premature notice of appeal remains on file and springs into effect when the decision becomes appealable."). We leave open the timeliness of a petition filed after seven days and note that Congress might wish to correct this apparent error in drafting.

[5] *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 796 (5th Cir. 2007). Ordinarily, we review a remand order for abuse of discretion, but that is a product of 28 U.S.C. § 1447(d)'s bar to review of most non-discretionary remand orders. *See Certain Underwriters at Lloyd's, London v. Warrantech Corp.*, 461 F.3d 568, 572 (5th Cir. 2006).

[6] *Braud v. Transp. Serv. Co. of Ill.*, 445 F.3d 801, 803 (5th Cir. 2006).

[7] *Id.*

the filing of Abshire et al.'s ninth amended complaint "commenced" a new suit for purposes of CAFA.[8] If not, CAFA does not apply and removal under its provisions was improper.

We have held, as have all other circuits that have addressed the issue, that the date on which a civil action is "commenced" for purposes of CAFA is determined by state law.[9] We have further held that Louisiana considers a suit "commenced by filing of a pleading presenting the demand to a court of competent jurisdiction."[10] Thus, our default rule under Louisiana law is that, absent special circumstances, a suit is commenced only at the time the original petition is filed in a court of competent jurisdiction ("the default rule"). Therefore, Abshire et al. "commenced" this suit long before CAFA's effective date — on or about December 11, 1991, when at least one of the petitions for damages was filed in a Louisiana court competent to hear it.[11]

We have recognized, however, that at least one exception applies to the default rule, viz., when there are special circumstances, a suit may be "commenced" more than once. In *Braud v. Transport Service Co. of Illinois*, we held that, for purposes of CAFA, the addition of a new defendant to a case commences a new civil action as to that defendant.[12] Louisiana now asks us to extend our holding in *Braud* by recognizing an additional exception to the default rule: specifically, that Abshire et al. commenced a new civil action when

---

[8] For an excellent discussion of CAFA's commencement provision, see James M. Garner, *Congressional Welcome to Federal Court — The Class Action Fairness Act: Has the Party Just Begun?*, 80 TUL. L. REV. 1669, 1670-87 (2006).

[9] *Braud,* 445 F.3d at 803.

[10] *Id.* at 804 (citing LA. CODE CIV. PROC. art. 421 (2008)).

[11] The precise dates on which the two other petitions were filed does not appear in the record. No party disputes that the petitions were filed long before CAFA's effective date, which is all that is relevant.

[12] 445 F.3d at 804.

they filed the ninth amended complaint. Louisiana reasons that the latest complaint seeks class treatment for the first time and exposes Louisiana to additional liability via (1) a claim for attorneys' fees and costs, (2) the "resurrection" of claims held by deceased, substitution-less plaintiffs, and (3) the "resurrection" of the dual-capacity plaintiffs' previously dismissed claims. Noting that no new parties or claims have been added, Abshire et al. counter that merely adding class allegations is insufficient to constitute the commencement of a new suit. We address each contention in turn, cognizant that all appear to present questions of first impression in this circuit.

We may quickly dispose of Louisiana's contention that the mere addition of class allegations commences a new civil action for purposes of CAFA. Louisiana asserts that the term "civil action" in § 9 of CAFA must be read to mean "class action," meaning that any effort to seek class certification not sought before CAFA's effective date permits removal. This reading is in tension with the plain language of the statute; "civil action" is not synonymous with "class action." Conceptually, a "civil action" is a more extensive, more inclusive proceeding than a "class action," which is a subset of all civil actions.[13] A "civil action" may commence before it becomes a "class action," and Congress selected the commencement of the "civil action" as the relevant event under CAFA's effective-date provision.

Louisiana's reading is also in tension with the Tenth Circuit's decision in *Pritchett v. Office Depot, Inc.*, which held that "Congress signaled an intent to narrow the removal provisions of [CAFA] to exclude currently pending suits" by

---

[13] This is evidenced by CAFA's definition of "class action." In 28 U.S.C. § 1332(d)(1)(B), "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." Louisiana's proffered reading would treat CAFA's definition of "class action" as the definition of "civil action" as well, which is clearly incorrect.

deleting language that would have extended CAFA to "cases in which a class certification order is entered on or after the enactment date."[14] If "civil action" were treated as congruent with "class action" for purposes of § 9, then a class-certification order would commence a new suit. *Pritchett*, however, does not completely resolve the matter because, even though the certification order there post-dated CAFA, class allegations had been included in the complaint, which was filed pre-CAFA. We find this of no moment, however, because, as we have said, the date on which a civil action commences is determined according to state law, and Louisiana has not invited our attention to any authority holding that controlling state law deems a civil action to have been re-commenced when a complaint is amended to seek class treatment.

To convince us that the default rule under the forum state's law – here, that a suit is commenced only at the time the original petition is filed in a court of competent jurisdiction – should not be applied in this context, Louisiana would have to make the same kind of persuasive showing that the newly added defendant made in *Braud*. There, we explained that it would be "a novel and unjust principle to make the defendants responsible for a proceeding of which they had no notice."[15] Louisiana cannot make a similarly persuasive showing here because the notice and due-process concerns that motivated our *Braud* holding are wholly absent from this suit. Abshire et al.'s ninth amended complaint adds not a single plaintiff of whose claim Louisiana was not already aware (the claim for attorneys' fees is the only arguable exception, which we address below). The proposed class definition is carefully tailored to limit the class to persons who were individual parties to the suits filed in the early 1990s. Even though some of those parties have died, requiring substitution of

---

[14] 420 F.3d 1090, 1094-95 (10th Cir. 2005).

[15] 445 F.3d at 805 (internal quotation marks omitted)).

successors to preserve their claims in the absence of class treatment, Louisiana cannot argue that it lacked notice that the now-deceased plaintiffs for whom there are no successors to substitute were, at some point, claimants.

Neither is this a case like *Plummer v. Farmers Group, Inc.*, which presented a close call.[16] In *Plummer*, the initial complaint "involved one claim, one theory of recovery, and one Oklahoma plaintiff."[17] The *Plummer* plaintiffs amended their pleadings after CAFA's effective date, turning the suit into "a three count case with several theories of recovery asserted by thousands of potential plaintiffs spanning the United States."[18] The *Plummer* court thought that such an amendment presented a "unique circumstance in which some action other than filing a complaint in court is deemed to commence a lawsuit."[19] That is a doubtful proposition as to the mere addition of class allegations standing alone, especially when, as here, the class comprises only individuals or successors of individuals who were parties to the suits filed in the early 1990s.[20]

So, even if we were to adopt the *Plummer* court's analysis, Abshire et al.'s ninth amended complaint is not a "drastic modification to a petition by way of amendment which initiates a class action" that would present a "unique circumstance in which some action other than filing a complaint in court is

---

[16] 388 F. Supp. 2d 1310, 1313-14 (E.D. Okla. 2005). Neither is this case analogous to *Senterfitt v. SunTrust Mortgage, Inc.*, 385 F. Supp. 2d 1377, 1378-79 (S.D. Ga. 2005), which involved an amendment adding an additional 16 years to the class period and "significantly increas[ing] the size of the potential class."

[17] 388 F. Supp. 2d at 1313.

[18] *Id.*

[19] *Id.* at 1314 (internal quotation marks omitted).

[20] The Seventh Circuit has rejected the notion that the addition of class members to a suit involves the addition of new plaintiffs, implicitly repudiating the *Plummer* court's approach. *Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330, 334 (7th Cir. 2005); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750, 752 (7th Cir. 2005).

deemed to commence a lawsuit."[21]  Even if there were some question whether, to use Louisiana's colorful analogy, the claims of the now-deceased, substitution-less plaintiffs that it contends would be "resurrected" by class treatment are "new" claims or plaintiffs, we are nevertheless certain that any resurrection worked here does not work a "drastic modification" in the case by "significantly increas[ing] the size of the potential class."[22]  Satisfied that merely melding the plaintiffs previously joined to a suit into a class for case management purposes is not itself sufficient to commence a new suit under CAFA, we move on to Louisiana's second argument, viz., that a new civil action is commenced under CAFA when parties or claims are added in an amended complaint.

In *Braud*, we limited our holding – that changes made to a complaint after filing may commence a new suit for purposes of CAFA – to a change that added new *defendants*, noting that "[w]e do not decide when or whether the addition of new claims to a pre-CAFA case provides a new removal window."[23]  Other circuits have addressed the issue, however.  In *Knudsen I*, the Seventh Circuit wrote in dicta that adding "a novel claim for relief or add[ing] a new party" commences a new suit for purposes of CAFA.[24]  *Knudsen I* also suggested a method by which courts should determine whether an amendment to a complaint asserts a "novel claim for relief," cautioning: "We imagine, though we need not hold, that . . . when a claim relates back to the original complaint (and hence is treated as part of the original suit)," it does not commence a new suit, but when a claim is "sufficiently independent of the original contentions[,] . . .

---

[21] 388 F. Supp. 2d at 1313-14 (internal quotation marks omitted).

[22] *Id.*; *Senterfitt*, 385 F. Supp. 2d at 1379.

[23] 445 F.3d 801, 808 n.16 (5th Cir. 2006).

[24] *Knudsen v. Liberty Mut. Ins. Co.* (*Knudsen I*), 411 F.3d 805, 807 (7th Cir. 2005) (Easterbrook, J.).

it must be treated as fresh litigation."[25]  *Knudsen I* made explicit that its relation-back analysis was modeled on the federal relation-back rule found in Federal Rule of Civil Procedure 15(c).[26]  In *Knudsen II*, after reviewing the defendants' second attempt to remove the action when the plaintiffs made new claims for which the original pleadings did not provide notice, the court adopted this approach, but looked to state (Illinois) as well as federal relation-back law.[27]

The Tenth Circuit has also addressed the contention advanced here by Louisiana that a new civil action is commenced under CAFA when parties or claims are added in an amended complaint.  In *Prime Care of Northeast Kansas, LLC v. Humana Insurance Co.*, that court adopted a modified version of the relation-back approach that the Seventh Circuit had endorsed in *Knusden I*, one that we discussed but did not adopt in *Braud*.[28]  *Prime Care* held that the relation-back analysis applies to new claims and (contrary to *Braud*) that the addition of a defendant after CAFA's effective date did not necessarily commence a new civil action if state law would view the addition of the new defendant as relating back to the filing of the original complaint.[29]  The Eighth Circuit approached the problem of a new named party similarly in *Plubell v. Merck & Co.*, a case in which the plaintiff amended the complaint to substitute the class representative after CAFA's effective date.[30]  These cases present two options for

---

[25]  *Id.*

[26]  *Id.*

[27]  *Knudsen v. Liberty Mut. Ins. Co.* (*Knudsen II*), 435 F.3d 755, 757 (7th Cir. 2006) (Easterbrook, J.).

[28]  447 F.3d 1284, 1286, 1288 (10th Cir. 2006).

[29]  *Id.* at 1288-89.  ("[W]hether a post-CAFA amendment triggers a substantive right of removal under CAFA by the affected parties depends on whether the amendment relates back to the pre-CAFA pleading that is being amended.").

[30]  434 F.3d 1070, 1071-73 (8th Cir. 2006).

purposes of CAFA: (1) Only the addition of a new defendant re-commences a suit; or (2) the addition of a new plaintiff or a new claim re-commences a civil action under CAFA, but only if the amended pleadings do not "relate back" to the original, pre-CAFA complaint. We need not consider choosing between these options on the facts of this case, however, as Abshire et al.'s ninth amended complaint relates back to the original complaint or, at the least, to one or more pre-CAFA complaints, such as the eighth amended version.

We begin our analysis by noting that the relation-back approach to commencement that other circuits employ, to the extent that it is ever analytically relevant, is particularly unilluminating in this case.[31] CAFA's commencement provision is a non-retroactivity provision, presumably motivated by the typical concerns that caution against retroactively applying a rule or statute, viz., the unjust disturbance of settled legal expectations on which a party has relied.[32] "Relation back is intimately connected with the policy of the statute of limitations."[33] The policies underlying statutes of limitations — evidentiary concerns and repose — require that a plaintiff (1) commence suit (preserving the evidence) and (2) furnish the defendant notice of the suit and its

---

[31] *See* Garner, *supra* note 8, at 1683-86 ("*Knudsen I* speculated that a Rule 15 analysis could form the basis for evaluating an amendment that commenced a new action for CAFA applicability purposes. A Rule 15 analysis is primarily concerned, however, with providing a balance between allowing a plaintiff the ability to interrupt statutes of limitations and equitable considerations of protecting a defendant from stale claims. In contrast to the purposes underlying relation-back analysis, jurisdictional analyses have principally been concerned with constitutional issues and ease of application. It therefore appears that a jurisdictional rule dependent upon Rule 15 fairness considerations is not conceptually consistent with traditional jurisdictional analysis and can create inconsistent results." (footnotes omitted)).

[32] *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971) (explaining that a rule may be denied retroactive application if its application would work an injustice), *overruled by Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993) (limiting *Chevron Oil's* approach for judicial decisions, but not repudiating the general policy behind non-retroactivity as explained in *Chevron Oil*).

[33] FED R. CIV. P. 15 advisory committee's notes.

claims (preventing repose from vesting).[34] When Rule 15(c) is satisfied, neither of these policies is impinged because the plaintiff commenced suit before the limitations period lapsed and the defendant knew or should have known of the suit and the claims, allowing him to preserve his evidence. In such a circumstance, at least according to the drafters of the Rules, it would work an injustice to time-bar a plaintiff's claim against a particular defendant not earlier named or a specific claim not earlier pleaded. Yet, an amendment to assert a new claim that "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading,"[35] which thus satisfies Rule 15(c), might disturb settled legal expectations if such claim is based on a statute enacted after the defendant's conduct. And, an amendment to assert a claim that does not arise out of the transaction or occurrence described in the original complaint will not disturb settled legal expectations if brought within the statute-of-limitations period. Relation-back and non-retroactivity might overlap, but, given their logical independence, it is far from pellucid why the relation-back test should control our analysis of CAFA's non-retroactivity provision.

In fact, the concerns balanced by the relation-back doctrine are virtually non-existent in this case. Louisiana was sued long ago on all of the claims, except, possibly, on the below-addressed claims for attorneys' fees and costs, by all of the members of the putative class. Even if we were to grant that some of those claims ran aground over the past 17 years and that a class action might revive them,[36] Louisiana lost any expectation of repose for claims brought by the

---

[34] *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 427 (1965).

[35] FED. R. CIV. P. 15(c)(1)(B).

[36] It is unclear how deceased, substitution-less plaintiffs are in a position to recover anything, even from a class action. It is also unclear how the previously dismissed claims of the dual-capacity plaintiffs can be revived by the trial court in light of its earlier rulings on those claims. Of course, if the district court's holdings on substitution or the beneficiary-only claims are reversed on appeal, then Louisiana could be exposed to "additional" liability for

named plaintiffs in this litigation concerning Louisiana's acts or omissions in the underlying matters when Abshire et al. filed this action in the early 1990s. And, at this point, any evidentiary concerns result from the length of the litigation, not from Abshire et al. sleeping on their rights. Neither are there notice concerns arising from the strategic choices made by Louisiana prior to the filing of the ninth amended complaint. Irrespective of whether it knew that this suit exposed it to class liability, Louisiana could not have removed this case prior to CAFA, so notice could not have affected its tactical decisions, at least not its choice of forum: It had none. Simply put, this is not a situation in which Louisiana could say, "Well, if I had known it was going to be a class action at the time it was filed, I'd have removed."

Even if we assume, arguendo, that it is appropriate to engage in the relation-back test found in either Louisiana law or the Federal Rules, we would conclude that the "resurrected" plaintiffs and claims clearly satisfy both. In *Giroir v. South Louisiana Medical Center*, the Louisiana Supreme Court held that the addition of plaintiffs relates back to the filing of the original petition if

> (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.[37]

The only "newly added" plaintiffs, i.e., those whom one could arguably suggest were not already parties to the litigation at some point prior to the ninth amended complaint, are the survivors of the earlier deceased plaintiffs who were not properly substituted before class certification was sought. If any such

---

those claims, but Louisiana faces that risk with or without class certification.

[37] 475 So. 2d 1040, 1044 (La. 1985).

persons are in fact included in the class definition — and that is hardly clear, as the class definition is limited to those persons who were *already parties* to the three state-court petitions — they satisfy *Giroir*. As for federal law, the Seventh Circuit has held that class members are not new plaintiffs even when they were not previously joined to the action as individuals, a rule that we find persuasive and completely dispositive of Louisiana's argument here.[38] This reasoning also applies to the claims of the dual-capacity plaintiffs.

As for Louisiana's protestations that Abshire et al.'s request for attorneys' fees commences a new "civil action" against it, we need not address the dispute between the parties concerning the meaning of our holding in *Grant v. Chevron Phillips Chemical Co.*[39] Regardless whether Louisiana itself or a common fund might be on the hook for Abshire et al.'s fees at some future point, and regardless whether Louisiana could have been liable for attorneys' fees under state law before Abshire et al. sought class certification, Louisiana has invited our attention to no authority that holds a request for attorneys' fees does not relate back to an original filing. To the contrary, our research reveals just the opposite, given that attorneys' fees obviously arise out of the same transaction or occurrence that led to the filing of the original complaint, which is the test for relating back under both federal and Louisiana law.[40]

Thus, whether we apply the Louisiana or the federal relation-back analysis to Abshire et al.'s ninth amended complaint, we are convinced that they obviously have not commenced a new "civil action." Likewise, when we

---

[38] *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750, 752 (7th Cir. 2005).

[39] 309 F.3d 864, 874-75 (5th Cir. 2002).

[40] *See* FED. R. CIV. P. 15(c)(1)(B); LA. CODE CIV. PROC. ANN. art. 1153 (2008) (announcing a "transaction[] or occurrence" test substantially similar to the federal standard); *cf. Ford v. Murphy Oil, U.S.A., Inc.*, 710 So. 2d 235, 235 (La. 1997) (per curiam) (Calogero, C.J., concurring) (noting that an amendment to a petition to assert an individual claim after a class has been decertified relates back to the original petition).

apply our current default rule under Louisiana law, we are convinced that the ninth amended complaint does not commence a new civil action, because the petition was filed pre-CAFA in a court of competent jurisdiction and the *Braud* exception does not apply. As we reach the same result under either analysis, we decline to create another exception to the default rule under Louisiana state law. We therefore apply Louisiana law, which provides that a civil action commences only on the filing of the initial pleading in a competent court, and we hold that Abshire et al. commenced this civil action only once, and then long before CAFA's effective date. Remand to state court is appropriate because Abshire et al. commenced their suit before CAFA's effective date, and no other basis of jurisdiction appears from Louisiana's notice of removal. This conclusion obviates the need to address CAFA's mandatory exceptions to jurisdiction urged by Abshire et al.

We end our discussion of this issue by correcting the parties' error regarding *Braud*, which error is responsible for much of the confusion in this case. We made two separate holdings in *Braud*. First, we held that the addition of a *defendant* commences a new suit *as to that defendant* for purposes of CAFA. Second, we held that when a new suit is commenced by the addition of a new defendant, a new window of removability opens under 28 U.S.C. § 1446(b). Here, the parties erred by focusing their analyses on *Braud*'s second holding, sparring over whether the ninth amended complaint "provides (1) a new basis for removal or (2) changes the character of the litigation so as to make it substantially a new suit."[41] That, however, is the test for a new removal window under § 1446(b); in *Braud* we spoke of § 1446(b) as governing removability only *after* we had first determined that the addition of a new defendant commenced a new civil action as to that defendant. Given that precursor, we logically concluded that

---

[41] 445 F.3d 801, 806 (5th Cir. 2006) (internal quotation marks omitted).

commencement of a new suit for purposes of CAFA was necessarily a substantial change in the character of the litigation, meaning that a new window of removability was opened under § 1446(b).[42] Indisputably then, whether an amendment to a complaint satisfies § 1446(b)'s test for removability is not determinative of whether a new suit has been commenced for purposes of CAFA. To read *Braud* otherwise would result in what the Tenth Circuit has described as "absurd consequences."[43] The parties' reading of *Braud* achieves these "absurd consequences" by improperly conflating the question under CAFA (Has a new suit been commenced so that CAFA applies?) and the question under § 1446(b) (If jurisdiction exists, may the case be removed?). Even though § 1446(b)'s one-year time bar to the removal of suits based on diversity does not apply under CAFA,[44] there are still suits for which jurisdiction exists but for which removal is improper. Section 1446(b) and § 9 of CAFA ask different questions because they protect different policies: Section 1446 protects a plaintiff's choice of forum from a defendant's untimely effort to remove unless the defendant could not have removed the case before or did not have the same incentives to remove it; Section 9 of CAFA protects a plaintiff's choice of forum from Congress's post hoc expansion of the federal courts' subject matter

---

[42] *Id.* at 805-06.

[43] *See Prime Care of Ne. Kan., LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1289 (10th Cir. 2006) ("Moreover, the confusion of a removal window [governed by § 1446(b)] with the substantive right to remove would lead to absurd consequences, which can be illustrated by a simple example. Because § 1446(b) grants the defendant thirty days to remove a case following service of the complaint, if a removal window after CAFA's effective date is enough to trigger application of CAFA, then CAFA actually applies to all civil actions commenced after *or up to thirty days before* its designated effective date — a bizarre result contrary to the plain wording of the Act's effective date."). *But see* Garner, *supra* note 8, at 1684 ("It stands to reason that because the defendants raised a potential jurisdictional problem [,viz., § 9 of CAFA], a court would look for answers in jurisdictional statutes. *Knudsen I* did as much by looking to 28 U.S.C. § 1446(b) . . . .").

[44] 28 U.S.C. § 1453(b) (2006).

jurisdiction unless the plaintiff attempts to use an old suit insulated from removal to bring new claims.

## B.    Fees and Costs

### 1.    Standard of Review

We review for abuse of discretion a decision by the district court to grant or deny attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).[45]

### 2.    Merits

As an initial matter, Louisiana claims that we lack jurisdiction to review the order of the district court denying attorneys' fees and costs. Although CAFA's limited exception to § 1447(d)'s bar to reviewing orders of remand does not mention reviewing orders relating to fees and costs, such orders would be reviewable even if the district court's remand order were not; § 1447(d) does not strip us of jurisdiction to review orders collateral to a remand order.[46] We therefore have jurisdiction.[47]

On the merits of the district court's decision to deny fees and costs, we cannot say that there was an abuse of discretion. We apply the test announced by the Supreme Court in *Martin v. Franklin Capital Corp.*, which held that "absent unusual circumstances, attorney's fees should not be awarded [under § 1447(c)] when the removing party has an objectively reasonable basis for

---

[45] *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004).

[46] *See id.*

[47] In fact, Abshire et al. need not have petitioned for leave to cross-appeal this issue; they need only have cross-appealed it after we granted Louisiana permission to appeal the remand order. The prohibition against reviewing "[a]n order remanding a case . . . on appeal or otherwise," 28 U.S.C. § 1447(d), might create thorny issues when fees and costs have been *denied* and we do not (or cannot) grant permission to appeal the underlying remand order, but we need not pass on that issue today.

removal."[48]  The statute does not embody either a strong preference for or a strong preference against fee awards.[49]

Even though there is some evidence in the record (e.g., Louisiana's prior effort to remove) that the instant removal had the "purpose of prolonging [the] litigation and imposing costs on" Abshire et al., it is equally true that, given the complexity of the instant commencement question, an award of fees might "undermin[e] Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."[50]  After CAFA's effective date, Louisiana received an amended complaint that for the first time included class allegations.  Louisiana had only our decision in *Braud* as guidance on our views, and *Braud* expressly withheld judgment on at least one issue dispositive of the instant case.  Although it may have been "objectively unreasonable" for Louisiana to conclude that the changes in Abshire et al.'s ninth amended complaint, at least in terms of their legal (as opposed to strategic) effect, would suffice to constitute an entirely new civil action, we cannot say that reaching the opposite conclusion was an abuse of discretion.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court remanding this case to the state court from which it had been removed by Louisiana and denying the claims of Abshire et al. for attorneys' fees and costs.

---

[48]  546 U.S. 132, 136 (2005).

[49]  *Id.* at 140.

[50]  *Id.*