# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2010

No. 10-30497
Summary Calendar

Lyle W. Cayce
Clerk

MELISSA WILSON BERNIARD,

Plaintiff

v.

DOW CHEMICAL COMPANY,

Defendant

-------------------------------------------------------------

CHARLES LANDRY; CHARLES PRESTON; EVA BAILEY; ROY LOVE,
Individually and on Behalf of All Others Similarly Situated,

Plaintiffs - Appellees

v.

DOW CHEMICAL COMPANY; UNION CARBIDE CORPORATION,

Defendants - Appellants

-------------------------------------------------------------

CHRISTALYN BROWN; HOPE BLANCO; DESMOND HILAIRE, and His
Minor Son Xavier James Hilaire; GAIL HILAIRE, and Her Minor Son Xavier
James Hilaire,

Plaintiffs - Appellees

No. 10-30497

v.

DOW CHEMICAL COMPANY; UNION CARBIDE CORPORATION,

Defendants - Appellants

------------------------------------------------------------

MAGAN ENNIS,

Plaintiff - Appellee

v.

DOW CHEMICAL COMPANY; UNION CARBIDE CORPORATION,

Defendants - Appellants

------------------------------------------------------------

BUDWIN PLACIDE,

Plaintiff - Appellee

v.

DOW CHEMICAL COMPANY; UNION CARBIDE CORPORATION,

Defendants - Appellants

------------------------------------------------------------

SHEILA GUIDRY, Individually and on Behalf of All Others Similarly Situated,

Plaintiff - Appellee

v.

No. 10-30497

DOW CHEMICAL COMPANY; UNION CARBIDE CORPORATION,

Defendants - Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-4881

---

Before WIENER and ELROD, Circuit Judges.[*]

PER CURIAM:[**]

This is a consolidated appeal of several orders of the district court remanding the seven class action cases consolidated therein to the state district court in St. Charles Parish, Louisiana. Two of the cases thus remanded were originally filed in the district court pursuant to the Class Action Fairness Act ("CAFA");[1] the rest were initially filed in that state court and were thereafter removed to the district court by the common defendants, who asserted federal jurisdiction based on CAFA and, alternatively, on diversity of citizenship[2] and supplemental jurisdiction.[3]

---

[*] This opinion is being entered by a quorum, pursuant to 28 U.S.C. § 46.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[1] 28 U.S.C. §§ 1332(d) and 1453.

[2] 28 U.S.C. § 1332.

[3] 28 U.S.C. § 1367.

No. 10-30497

The orders of the district court appealed herein held that federal jurisdiction was lacking under both CAFA and diversity jurisdiction. We do not have jurisdiction to review the district court's decision to remand for lack of diversity jurisdiction,[4] but we may review its decision to remand for lack of CAFA jurisdiction.[5]

CAFA authorizes federal jurisdiction over class actions that allege (1) the class of plaintiffs would exceed 100 persons, (2) at least one member of the class is diverse in citizenship from at least one of the defendants, and (3) the aggregate quantum of damages suffered by members of the plaintiff class exceeds $5 million (exclusive of interest or costs).[6] The parties do not contest the presence of the first two requirements, but the plaintiffs challenged the adequacy of the defendants' showing with regard to the amount-in-controversy requirement. The district court agreed with the plaintiffs that the requisite aggregate quantum of damages was lacking and remanded the case to state court. The defendants appealed. For the reasons outlined below, we affirm the district court's remand orders.

## I. Facts And Proceedings

Defendant-Appellant Union Carbide Corporation ("UCC"), a wholly owned corporate subsidiary of The Dow Chemical Company ("Dow"), maintains and operates a facility in Taft, Louisiana, a few miles West North West of Hahnville, in St. Charles Parish, Louisiana. On the morning of July 7, 2009, a tank at that facility experienced a sudden release of ethyl acrylate ("EA"), a potentially

---

[4] 28 U.S.C. § 1447(d).

[5] 28 U.S.C. § 1453(c)(1).

[6] 28 U.S.C. § 1332(d)(2) and (5)(B).

No. 10-30497

noxious chemical.  Shortly thereafter, the St. Charles Parish Department of Emergency Preparedness ("DEP") closed some roads and evacuated residents and businesses from an area stretching some two miles eastward from the UCC facility.

The DEP was not the only "first responder" to this sudden, isolated, and relatively limited chemical release:  At least two of plaintiffs' attorneys or law firms managed to file class action petitions in state district court on the very day of the release.  (Others of their colleagues were only marginally slower to respond; they filed their complaints only days or weeks later.)  Here, the "race to the courthouse" cannot be explained by any concern that the claims would be untimely, given Louisiana's prescriptive period of one year within which to file such actions following the incident.

The five state court lawsuits implicated in this consolidated appeal were removed to federal court by Defendants-Appellants pursuant to CAFA.  They urged that when the class plaintiffs' allegations about the numerosity of class members, the geographical area affected, and the types and extent of the EA-caused injuries incurred by the members of the class are compared to the range of damages previously recovered in the similar class actions cited to the court by Defendants-Appellants, it becomes clear that CAFA's jurisdictional threshold of $5 million was likely to be met or exceeded.  In three detailed orders, however, the district court carefully analyzed its jurisdiction over these cases and then remanded them to state court.[7]  After considering the allegations in the various

---

[7] The district court dismissed two of the cases in response to the respective plaintiff's motion to remand and dismissed the other three cases *sua sponte*, as is within the district court's authority.  "It is incumbent on a court of the United States, whether trial or appellate, to dismiss an action whenever it appears that subject matter jurisdiction is lacking, and the

No. 10-30497

pleadings as to the geographical reach of the chemicals, the number of persons affected, the seriousness and extent of injuries suffered, and the potential monetary value of the damages incurred by the affected class members for present compensatory damages as well as for pain and suffering, psychological and longterm future damages, and even punitive damages, the district court concluded that the Defendants-Appellants had failed to carry their burden of establishing that it was facially apparent from the allegations in the class plaintiffs' petitions that the aggregate recovery by the class members would likely exceed $5 million. Inasmuch as, on appeal, there is no question about CAFA's other threshold requirements, the issue of remand turns solely on the element of damages.

<u>II. Analysis</u>

A. Standard Of Review

We review *de novo* the district court's remand of a state court action previously removed under CAFA.[8] Specific to today's ruling is our *de novo* review of the district court's holding that CAFA's threshold amount in controversy was not met.[9]

B.     CAFA Jurisdictional Amount

---

court must do so sua sponte if the parties have not brought the issue to the attention of the court." *Marshall v. Gibson's Prods., Inc.*, 584 F.2d 668, 672 (5th Cir. 1978) (citation omitted).

    [8] *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 272 (5th Cir.), *cert. denied*, 130 S. Ct. 756 (2009).

    [9] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 722 (5th Cir. 2002).

No. 10-30497

All recognize that Louisiana law prohibits allegations by tort plaintiffs of the quantum of the damages to which they are entitled.[10]  Even though the removing party (or party resisting remand) has the burden of establishing the existence of federal jurisdiction,[11] we have specified a different standard of proof when the quantity of damages is not alleged by the plaintiff class: The removing defendant must prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount.[12]  In proceeding from that point, a defendant seeking to sustain removal may follow either of two tracks:  (1) Adduce summary judgment evidence of the amount in controversy,

or (2) demonstrate that, from the class plaintiffs' pleadings alone, it is "facially apparent" that CAFA's amount in controversy is met.[13]

Here, the Defendants-Appellants elected to follow the facially-apparent path.  Doing so requires examination of the petitions and complaints of the Plaintiffs-Appellees to determine if the resulting amount in controversy is likely to equal or exceed the jurisdictional amount.[14]  We agree with Defendants-Appellants that the proper test for facial apparency is the one recently articulated by the Seventh Circuit in *Spivey v. Vertrue, Inc.*:

---

[10] La. Code Civ. Proc. Ann. art. 893.

[11] *Gaitor v. Peninsular & Occidental S.S. Co.,* 287 F.2d 252, 253-54 (5th Cir. 1961).

[12] *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir. 1993).

[13] *Id.* at 57-58; *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999).

[14] *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1336 (5th Cir. 1995).

7

No. 10-30497

The removing party, as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million. This is a pleading requirement, not a demand for proof. Discovery and trial come later. A removing defendant need not confess liability in order to show that the controversy exceeds the threshold. The removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands. . . . The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks. Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.[15]

Moreover, as the district court aptly noted, even under the facial-apparency test "[r]emoval . . . cannot be based simply upon conclusory allegations,"[16] and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[17]

---

[15] 528 F.3d 982, 986 (7th Cir. 2008) (internal quotations and citations omitted).

[16] *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (citation omitted).

[17] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

No. 10-30497

Defendants-Appellants insist on appeal that they established, to a "reasonable probability,"[18] that the several class pleadings make it facially apparent that CAFA's required amount in controversy is satisfied. In the district court, Defendants-Appellants relied on census data of the various geographical areas referred to in the several pleadings and complaints, and compared the quantum of recovery in previously reported cases that involved occurrences and injuries similar to the kinds about which the instant class plaintiffs complain.[19]

As the Defendants-Appellants assert, the district court might have misspoken when it stated that neither party claimed that the jurisdictional minimum was apparent from the faces of the petitions. Nevertheless, after conducting our *de novo* review, we are satisfied that the district court reached the correct result despite any error that might have been contained in that statement. This becomes evident, we conclude, when Defendants-Appellants' proffered analysis of the pleadings is tested for whether it is facially apparent therefrom that the jurisdictional minimum is satisfied. Here, Defendants-Appellants' bald exposure extrapolations are insufficient to establish the likely number of persons affected by the release or, for those affected, the severity of

---

[18] The "reasonable probability" standard is the same as the "preponderance standard" (more-likely-than-not test). *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

[19] Defendants-Appellants further note that, in the *Killen* and *Cochran* cases, which were initially filed in federal court, the plaintiffs expressly alleged that their claims would exceed $5 million, and that one of the state court plaintiffs did not dispute that the amount in controversy was more than $5 million. The mere recitation of jurisdictional facts, however, is not enough to establish subject-matter jurisdiction, *see St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998), and the language on which Defendants-Appellants rely in the state court action can hardly be construed as a judicial admission.

their harm. When we examine the several pleadings here at issue under that standard, we conclude, as did the district court, that, even when properly aggregated, the nature, timing, geographical extent, numerosity of the affected population, and nature of damage allegedly caused by this isolated, quickly controlled, and geographically limited EA escape, as pleaded in the several state court petitions, does not make it facially apparent that the stakes plausibly exceed $5 million.

Given the generalized and conclusional nature of the allegations of the several petitions and complaints (not surprising considering the fact that they were filed within hours or, at the most, within days following the release), we cannot say that, under the Seventh Circuit's *Spivey* standard, the Defendants-Appellants carried their burden of showing not only what the stakes of the litigation *could* be, but what they *are* in light of the plaintiffs' demands. Like the district court, we conclude that the Defendants-Appellants have failed to present a plausible explanation of how the claims of the class plaintiffs could equal or exceed $5 million. The Defendants-Appellants' methodology is speculative and unconvincing. They overstate the reach of the plaintiffs' petitions by improperly equating the geographic areas in which potential plaintiffs might reside with the population of the plaintiff class itself. Further, the comparisons that the Defendants-Appellants make to damage recovery in similar cases is too attenuated to satisfy their burden.

In our *de novo* review, we have aggregated the allegations of all seven consolidated cases, taking care, however, to avoid double counting and repetition in our effort to discern the alleged geographic and temporal reach of the EA release, the likely population of the affected class, and the effect of the release

on the limited number of potentially affected plaintiffs. As a result, we cannot say that Defendants-Appellants have satisfied their burden under their chosen path of facial apparency.

In so concluding, we acknowledge that the state court petitions of the class plaintiffs that were so hastily filed in St. Charles Parish present an oxymoronic picture. On the one hand, the pleadings of the class plaintiffs present an expansive view of the geographical reach of the chemicals, the number of persons likely affected, the seriousness and extent of the injuries caused by contact with the rapidly diluting EA, and the potential monetary value of the damages incurred by the affected parties, including not just compensatory damages but also those for pain and suffering, psychological and longterm future damages, and even punitive or exemplary damages. On the other hand, those pleadings also contain minimizing allegations, such as the fact that the road closure and evacuation of residents implemented by the DEP covered only a two mile stretch to the east of the Taft facility, as well as implications and deductions that in reality the release was quickly contained, atmospherically diluted, and relatively minor and temporary in its deleterious effects, and that the incident was short lived, with normalcy being restored in short order.

## III. CONCLUSION

For the foregoing reasons, we are convinced that the district court's CAFA-based remand of the consolidated cases should be affirmed. From the factual allegations contained in the pleadings under examination, we conclude that Defendants-Appellants have not met their burden of demonstrating plausibly that the $5 million amount in controversy is apparent. Neither shall we succumb to the siren song of CAFA's legislative history to err in favor of federal

No. 10-30497

jurisdiction, especially when, as here, we do not see the answer to the question of threshold quantum as an uncertain one. We need not address the issue of the local-controversy exception, and the district court's rulings on diversity jurisdiction and fraudulent joinder are not implicated in this interlocutory appeal under CAFA. Therefore, we neither address them nor imply either the propriety or impropriety of their handling in the district court. Rather, our judgment is limited to the rulings over which we have appellate jurisdiction, *viz*, remand of the subject cases to state court for failure of the proponents of CAFA jurisdiction to demonstrate that statute's amount-in-controversy requirement is met. Those orders are, in all respects,

AFFIRMED.