# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

────────

No. 15-30133

────────

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2015

Lyle W. Cayce
Clerk

CAMSOFT DATA SYSTEMS, INCORPORATED,

     Plaintiff–Appellant,

v.

SOUTHERN ELECTRONICS SUPPLY, INCORPORATED; ACTIVE SOLUTIONS, L.L.C.; BRIAN FITZPATRICK; HENRY J. BURKHARDT; IGNACE PERRIN; DELL, INCORPORATED; NETMETHODS, L.L.C.; MARK ST. PIERRE; CIBER, INCORPORATED; MARK KURT,

     Defendants–Appellees.

────────

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-1047

────────

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

CamSoft Data Systems, Inc. (CamSoft) filed a motion to remand to state court for lack of subject-matter jurisdiction.[1] In a previous appeal, we held that the district court erred by denying the motion for remand.[2] CamSoft

─────────

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] *Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 340 (5th Cir. 2014).

[2] *Id.*

No. 15-30133

subsequently moved for costs and attorney's fees under 28 U.S.C. § 1447(c), which the district court denied.  We affirm.

**I**

When determining subject-matter jurisdiction, we accept as true the allegations stated in the complaint.[3]  Because the availability of attorney's fees and costs under § 1447(c) turns on whether the removing party had an "objectively reasonable basis" for believing the district court had subject-matter jurisdiction,[4] our recitation of the facts also relies on the allegations set forth in CamSoft's state-court petition.

CamSoft became a licensed provider of a wireless internet system owned by Tropos Networks, Inc. (Tropos), which allowed for seamless wireless internet access on a city-wide scale.  After successfully deploying free wireless internet access in downtown Baton Rouge, CamSoft's owner, Carlo MacDonald, learned that New Orleans was interested in implementing a city-wide video surveillance system.  CamSoft began working with Active Solutions, LLC (Active) and Southern Electronics Supply, Inc. (Southern) to develop such a system.  CamSoft was responsible for, *inter alia,* integrating the wireless internet technology into the system.

CamSoft, Active, and Southern deployed the surveillance system in a successful pilot project in New Orleans.  The three entities then "formed a joint venture for the future sale of said wireless surveillance system" and submitted proposals to install the system in Baton Rouge and on a larger scale in New Orleans.

Shortly before the New Orleans proposal was submitted, Dell, Inc. (Dell) arranged a meeting with Active, Southern, and New Orleans officials without

---

[3] *Crane v. Johnson*, 783 F.3d 244, 250-51 (5th Cir. 2015) (citing *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012)).

[4] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

No. 15-30133

CamSoft's knowledge. Dell had an existing contract to provide technology to the State of Louisiana and could use that contract to circumvent bidding requirements for public projects. Dell allegedly sought to replace CamSoft in the joint venture and provide cameras and the Tropos wireless internet technology for the surveillance system. Southern and Active executed non-disclosure agreements with Dell and provided Dell with proprietary information belonging to CamSoft.

Former New Orleans officials who had worked on the pilot project formed NetMethods, LLC (NetMethods). NetMethods eventually joined forces with Dell and Tropos to market a wireless surveillance system, allegedly using intellectual property that belonged to Southern, Active, and CamSoft. In other words, after attempting to cut CamSoft out of the joint venture, Southern and Active were themselves cut out of their arrangement with Dell and replaced by NetMethods.

Active and Southern filed suit against Dell. CamSoft alleges that Active and Southern's complaint "erroneously failed to acknowledge the ownership rights of CamSoft to the wireless video surveillance system."

After unsuccessfully attempting to intervene in the suit against Dell,[5] CamSoft filed suit against Active and Southern in Louisiana state court, seeking to have its ownership rights in the surveillance system declared and seeking a share of the proceeds of Active and Southern's suit against Dell. CamSoft's state-court petition also alleged that Active and Southern filed a patent application for the wireless surveillance system, which failed to acknowledge CamSoft or MacDonald as an inventor of the system. The petition did not seek relief under any cause of action provided by the federal patent laws. Rather, CamSoft relied on various statutory causes of action in

---

[5] *Camsoft*, 756 F.3d at 330-31.

3

No. 15-30133

Louisiana state law as well as breach of fiduciary duty and breach of contract. CamSoft later filed an amended petition, adding several defendants including Dell, Tropos, and NetMethods. No party contends that the claims added in the amended petition are relevant in the present appeal.

On December 14, 2009, the defendants removed CamSoft's suit to federal district court. They alleged that the dispute over the ownership of the surveillance system necessarily required the resolution of a substantial question of federal patent law—inventorship of the surveillance system.

CamSoft timely filed a motion to remand for lack of federal subject-matter jurisdiction. The magistrate judge entered a report that recommended denial of the motion for remand. The magistrate concluded that CamSoft's claim of ownership of the surveillance system, while grounded in Louisiana state law, necessarily required resolution of the question of inventorship under federal patent law. The magistrate further concluded that CamSoft did not allege any alternative theories of ownership. The district court accepted the magistrate's analysis without comment and denied the motion for remand.

Pursuant to 28 U.S.C. § 1292(b), CamSoft moved for permission to file an interlocutory appeal of the order denying its motion to remand. The district court denied this motion.

CamSoft contends that because it was unable to obtain interlocutory review, it feared it would have had to spend several years litigating the case to final judgment in the district court, only to have that judgment vacated on appeal for lack of subject-matter jurisdiction. Therefore, to ensure that the district court had subject-matter jurisdiction, CamSoft filed an amended complaint adding claims under federal antitrust laws and the federal RICO statute. CamSoft's amended complaint also alleged an alternative basis for ownership of the surveillance system. Although the CamSoft's state court petition alleged that it had formed a joint venture with Southern and Active,

4

No. 15-30133

the amended federal complaint expressly maintained that the joint venture also gave CamSoft an ownership interest in the surveillance system.

The district court dismissed CamSoft's claims based on a joint venture as well as the RICO and federal antitrust claims. The district court initially concluded that the remaining claims still required resolution of a substantial question of patent law. But the court later asked the parties to outline their remaining claims. After reviewing the parties' outlines, the district court concluded that although it originally had federal question jurisdiction, all of the federal causes of action had been dismissed. The court then *sua sponte* declined to exercise supplemental jurisdiction over the remaining state-law claims, pursuant to 28 U.S.C. § 1367(c), and remanded the case to state court. The disposition of the purported question of patent law that was initially critical to the district court's jurisdiction is not clear from the record.

The parties then filed cross appeals in the Federal Circuit. CamSoft sought to appeal, *inter alia*, the district court's order denying its motion for remand for lack of subject-matter jurisdiction. Although the district court had remanded pursuant to § 1367(c), the § 1367(c) remand would have left undisturbed the district court's orders dismissing several of CamSoft's claims, whereas these unfavorable orders would be vacated if the district court lacked subject-matter jurisdiction.[6] The defendants appealed the district court's order remanding pursuant to § 1367(c). The Federal Circuit concluded that it lacked subject-matter jurisdiction over the appeals under 28 U.S.C. § 1295(a)(1)[7] and transferred the appeals to our court.

---

[6] *See id.* at 340.

[7] 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents.").

5

No. 15-30133

We held that the district court erred by denying CamSoft's motion to remand.[8] We explained that federal jurisdiction at removal turned only on "an inventorship assertion implicit in Cam[S]oft's ownership claim."[9] We concluded that we need not determine whether CamSoft made an implicit inventorship assertion because 35 U.S.C. § 116, which addresses inventorship of pending patent applications, does not provide the federal district courts with jurisdiction.[10] Rather, we held that only the Patent and Trademark Office has the power to adjudicate § 116 claims.[11] We therefore concluded that CamSoft's motion to remand should have been granted, upheld the district court's remand order, and vacated all of the district court's orders other than the remand order.[12]

CamSoft then moved in the district court for costs and attorney's fees pursuant to 28 U.S.C. § 1447(c). The district court denied CamSoft's motion on two grounds. First, the district court concluded that the defendants "did not lack an objectively reasonable basis for removal." Second, the district court explained that by adding the RICO and federal antitrust claims, CamSoft "played a significant role in prolonging the suit's stay in federal court." CamSoft timely appealed.

---

[8] *Camsoft*, 756 F.3d at 333-37.

[9] *Id.* at 333.

[10] *Id.* at 333-36.

[11] *Id.* at 334.

[12] *Id.* at 336, 340.

No. 15-30133

## II

We review the district court's decision not to award costs and attorney's fees under § 1447(c) for abuse of discretion.[13]  Under an abuse of discretion standard, we review a district court's legal conclusions *de novo*.[14]

As noted above, the district court provided two bases for denying CamSoft costs and attorney's fees.  The parties dispute whether the first basis—whether the defendants had an "objectively reasonable basis for removal"—is a question of law subject to *de novo* review.  CamSoft argues that because this ground requires "legal analysis" of "patent jurisdiction law" at the time of removal, our review must be *de novo*.

This argument cannot be squared with our decision in *Admiral Insurance Co. v. Abshire*.[15]  In *Abshire*, the district court granted the plaintiffs' motion to remand but denied the plaintiffs' motion for attorney fees under § 1447(c) because removal was not "objectively unreasonable."[16]  We concluded that remand was proper because the district court lacked subject-matter jurisdiction.[17]  On the question of attorney's fees, we noted that the defendants only had a single case from our court that spoke to the relevant jurisdictional issue, and that case "expressly withheld judgment on at least one . . . dispositive" issue regarding subject-matter jurisdiction.[18]  We then explained that although the defendant's legal position in support of removal "may have

---

[13] *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) (citing *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997)).

[14] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .").

[15] 574 F.3d 267 (5th Cir. 2009).

[16] *Id.* at 272.

[17] *Id.* at 279.

[18] *Id.* at 280.

No. 15-30133

been 'objectively unreasonable,'" we could not conclude that the district court abused its discretion in "reaching the opposite conclusion," and we affirmed the district court's denial of attorney's fees.[19]  *Abshire* establishes that although we must determine the state of the law at the time of removal to assess whether an "objectively reasonable basis" existed for removal,[20] objective reasonableness is not a question of law reviewed *de novo*.  Therefore, we review the district court's determination of objective reasonableness only for abuse of discretion.

## III

"If . . . it appears that the district court lacks subject matter jurisdiction" prior to final judgment, the district court must remand the case to state court.[21] 28 U.S.C. § 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[22]

In *Martin v. Franklin Capital Corp.*, the Supreme Court held that costs and attorney fees under § 1447(c) should not be awarded automatically upon remand.[23]  Rather, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."[24]  This standard does not require a showing that the decision to remove was "frivolous" or "without

---

[19] *Id.* at 280-81; *see also Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000) (declining to express an opinion on the meaning of Texas state court cases cited by the defendant in favor of removal beyond the fact that the defendant's position on these cases "was not an unreasonable one").

[20] 574 F.3d at 280 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)).

[21] 28 U.S.C. § 1447(c).

[22] *Id.*

[23] 546 U.S. at 136.

[24] *Id.* at 141.

8

foundation."[25] To determine objective reasonableness, we must examine, *inter alia*, the relevant case law on subject-matter jurisdiction "at the time of removal."[26]

The defendants filed the notice of removal on December 14, 2009, asserting that the district court had subject-matter jurisdiction under 28 U.S.C. § 1338(a). Section 1338(a) grants district courts jurisdiction over "any civil action arising under any Act of Congress relating to patents."[27] The notice of removal argued that CamSoft had asserted claims dependent "on the resolution of substantial questions of federal patent law" regarding inventorship of the surveillance system.

## A

35 U.S.C. § 116 addresses inventorship regarding "application[s] for patent[s],"[28] whereas 35 U.S.C. § 256 addresses inventorship of "issued patent[s]."[29] At the time of removal, CamSoft's petition alleged that the

---

[25] *See id.* at 138-39.

[26] *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293-94 (5th Cir. 2000); *see also Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280-81 (5th Cir. 2009)

[27] 28 U.S.C. § 1338(a).

[28] Section 116 provides, in relevant part:

Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, the Director [of the United States Patent and Trademark Office] may permit the application to be amended accordingly, under such terms as he prescribes.

[29] Section 256 provides:

(a) Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

(b) . . . The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

surveillance system was the subject of a patent application that had yet to issue.

In 2003, the Sixth Circuit had held that § 116 gives discretion solely to the Director of the U.S. Patent and Trademark Office to correct inventorship errors regarding pending applications, unlike § 256, which expressly empowers federal courts to correct inventorship errors relating to issued patents.[30] The Sixth Circuit therefore concluded that federal district courts lack jurisdiction to review the inventorship of unissued patents under § 116.[31]

In March 2010, the Federal Circuit reached the opposite conclusion in *HIF Bio, Inc. v. Yung Shin Pharmaceuticals Industrial Co.*, holding that district courts do have jurisdiction over claims under § 116.[32] Although *HIF Bio* issued over four months after the defendants filed the notice of removal, CamSoft acknowledges that several district courts reached the same conclusion as the Federal Circuit on the jurisdictional question before this case was removed.[33] Because district court jurisdiction under § 116 was clearly unsettled at the time this case was removed to federal court, CamSoft relies on three narrower arguments in support of its motion for costs and attorney's fees.

**B**

CamSoft first points to an additional holding in *HIF Bio*. Although the Federal Circuit concluded that district courts have jurisdiction over claims

---

[30] *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 583-84 (6th Cir. 2003).

[31] *Id.* at 584.

[32] 600 F.3d 1347, 1354 (Fed. Cir. 2010) ("[W]hile the district court has jurisdiction over the cause of action, it should have dismissed the claim under Rule 12(b)(6) because no private right of action exists.").

[33] *See, e.g.*, *Brown v. Toscano*, 254 F.R.D. 690, 695 (S.D. Fla. 2008); *Concrete Washout Sys., Inc. v. Minegar Envtl. Sys., Inc.*, No. CIVS041005WBSDAD, 2005 WL 1683930, at * 3-4 (C.D. Cal. July 12, 2005); *Post Performance, LLC v. Renaissance Imports, Inc.*, 333 F. Supp. 2d 834, 840 (E.D. Mo. 2004); *Mieling v. Norkar Techs., Inc.*, 176 F. Supp. 2d 817, 819 (N.D. Ill. 2001); *Heineken Tech. Servs., B.V. v. Darby*, 103 F. Supp. 2d 476, 479 (D. Mass. 2000).

under § 116, it also concluded that § 116 does not create a private right of action, such that § 116 claims should be dismissed under Rule 12(b)(6) for failure to state a claim.[34]  CamSoft asserts that in *HIF Bio*, once the Federal Circuit determined that the § 116 claim should be dismissed, "remand" to state court "was warranted for lack [of] ongoing federal subject matter jurisdiction."

Here, although dismissal on Rule 12(b)(6) grounds would have permitted the district court to retain jurisdiction over remaining state law claims or remand them at its discretion,[35] thus depriving CamSoft of the jurisdictional deficiency necessary to support an award of attorney's fees under § 1447(c),[36] this court previously concluded that the § 116 claim should have been dismissed under Rule 12(b)(1),[37] not Rule 12(b)(6), and that the case should have been remanded pursuant to § 1447(c).[38]  CamSoft thus could succeed here if it were able to show that there was no "objectively reasonable basis" for removal.

---

[34] *HIF Bio*, 600 F.3d at 1354.

[35] *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . [.]").

[36] *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 641 (2009) (holding that when all federal claims conferring original jurisdiction have been dismissed, the remand order declining to exercise supplemental jurisdiction pursuant to § 1367(c) "is not based on a lack of subject matter jurisdiction for purposes of §§ 1447(c) and (d)" (internal quotation marks omitted)); *see also* 28 U.S.C. § 1367 (silent on the questions of attorney's fees or costs); *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) ("Congress has authorized courts to deviate from [the default rule requiring each party to bear his own litigation expenses] in certain types of cases . . . ."); *cf. id.* at 2211, 2213-17 (addressing the propriety of attorney's fees pursuant to 42 U.S.C. § 1988 for a prevailing defendant following the district court's dismissal of a plaintiff's federal civil rights claims and the district court's decision "declin[ing] to exercise supplemental jurisdiction over the remaining state-law claims").

[37] *Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 336 (5th Cir. 2014); FED. R. CIV. P. 12(b)(1) ("lack of subject-matter jurisdiction").

[38] *Camsoft*, 756 F.3d at 337-39; 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

No. 15-30133

We note that the district court order on attorney's fees left open the possibility that CamSoft could recoup costs under Rule 54, so Rule 54 has no bearing on our analysis.[39]

## C

CamSoft next argues that even if the defendants were objectively reasonable in believing that the district court had jurisdiction over § 116 claims and that § 116 conferred a private right of action, the question of inventorship, as a matter of law, is irrelevant to the question of patent ownership.

CamSoft initially points to the fact that, as a corporation, it could neither invent nor be declared an inventor under the federal patent laws because only natural persons can be inventors.[40]  CamSoft also relies on the distinction between inventorship and ownership.  CamSoft quotes a portion of the Federal Circuit's decision in *Beech Aircraft Corp. v. EDO Corp.*, which explains:

> It is elementary that inventorship and ownership are separate issues. . . . Thus, inventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property.
>
> . . . . However, who ultimately possesses ownership rights in that subject matter has no bearing whatsoever on the question of who actually invented that subject matter.[41]

The question of ownership of patents is "generally a matter of state law."[42]

---

[39] FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party.").

[40] *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) (citing 35 U.S.C. § 115-118).

[41] *Id.*

[42] *Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009); *cf. Becher v. Contoure Labs., Inc.*, 279 U.S. 388, 391 (1929).

No. 15-30133

CamSoft argues that these tenets of patent law establish that inventorship is irrelevant to ownership. *Beech Aircraft* plainly establishes that the converse is true—*i.e.*, ownership is irrelevant to inventorship.[43] But CamSoft omits the preceding sentence in *Beech Aircraft*, which directly contradicts its argument. The Federal Circuit explained: "At the heart of any ownership analysis lies the question of who first invented the subject matter at issue, because the patent right initially vests in the inventor who may then, barring any restrictions to the contrary, transfer that right to another . . . ."[44]

The Federal Circuit has made clear that an ownership claim may, in some circumstances, turn on the question of inventorship. To be certain, there will be disputes over ownership in which inventorship is immaterial. For example, parties may make other arrangements, such as a contract, that result in the automatic assignment of ownership rights to persons other than the undisputed inventor.[45] The Federal Circuit noted in *HIF Bio* that "[i]nventorship is . . . not essential to . . . causes of action for . . . ownership,"[46] but this language does not rule out the possibility that inventorship might be relevant to ownership in some cases. The Federal Circuit further explained

---

[43] *See* 990 F.2d at 1248 ("[W]ho ultimately possesses ownership rights in that subject matter has no bearing whatsoever on the question of who actually invented that subject matter.").

[44] *Id.*

[45] *See, e.g., Leland Stanford Jr. Univ.*, 583 F.3d at 841-42 (addressing whether a clause in a contract "effects a present assignment of patent rights, or an agreement to assign rights in the future"); *see also HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1356-57 (Fed. Cir. 2010); *cf. Becher*, 279 U.S. at 389-90 (undisputed inventor's suit against employee who secretly obtained a patent in the employee's own name was properly resolved in state court under state-law causes of action establishing ownership of the patent); *Beech Aircraft Corp.*, 990 F.2d at 1248 ("[T]he patent right initially vests in the inventor who may then, barring any restrictions to the contrary, transfer that right to another, and so forth.").

[46] *HIF Bio*, 600 F.3d at 1356-57.

No. 15-30133

that an implied agreement between the parties in *HIF Bio* might resolve the question of ownership.[47]

Accordingly, the legal distinction between inventorship and ownership does not, by itself, determine whether a district court has jurisdiction over a claim for ownership. CamSoft's argument relying on this distinction cannot support an award of costs and attorney's fees.

**D**

Finally, CamSoft argues that even if the defendants were objectively reasonable in their assessment of the law regarding federal patent jurisdiction, the state court petition never actually contained a claim "arising under" § 116 that would confer subject-matter jurisdiction.

A case "aris[es] under" federal patent law for the purposes of § 1338(a) jurisdiction only when "a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."[48] Under the "well-pleaded complaint rule," the "arising under" question is answered only by examining the "plaintiff's statement of his own claim," without considering defenses raised, the plaintiff's allegations in anticipation of a defense being raised,[49] or counterclaims.[50] However, "merely

---

[47] *See id.* ("[T]he ownership dispute could be resolved without a determination of who invented the INVENTION. The amended complaint's allegation that the defendants' conduct gave rise to an implied contract between the parties could form the basis for resolving the ownership dispute because that implied contract could dictate which party owns the INVENTION."); *see also Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) ("[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories.").

[48] *Christianson*, 486 U.S. at 808-09.

[49] *Id.* at 809 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983)).

[50] *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

14

because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law."[51]  "[A] plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions."[52]  Finally, even if a "well-pleaded claim alleges [one] theory under which resolution of a patent-law question is essential[,] . . . . a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories."[53]

At this juncture, it merits repeating that our inquiry is not whether CamSoft's petition stated a claim that would ultimately satisfy the jurisdictional standard articulated above.  Additionally, we must put aside, for the moment, the various barriers that impede the federal courts from adjudicating claims under § 116.  Because we have already determined that federal jurisdiction over § 116 claims was unsettled at the time of removal, and thus that there was an objectively reasonable basis to believe that such a claim could raise a federal question, the subsequent analysis assumes *arguendo* that the federal courts may adjudicate § 116 claims.  We must determine whether the defendants had an "objectively reasonable basis"[54] to conclude that CamSoft's petition contained a claim that "necessarily depend[ed] on resolution of a substantial question" of inventorship under § 116.[55]

**1**

Before turning to the petition itself, the parties argue that the Federal Circuit and this court construed the petition in the first appeal in ways that

---

[51] *Christianson*, 486 U.S. at 809 n.3.

[52] *Id.*

[53] *Id.* at 810.

[54] *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)).

[55] *Christianson*, 486 U.S. at 808-10.

bear on the § 1447(c) analysis. CamSoft contends that the Federal Circuit's order concluding it had no jurisdiction under 28 U.S.C. § 1295(a)(1)[56] and transferring the appeal to the Fifth Circuit implicitly established that the petition did not contain any legal theory of ownership "arising under" § 116. In contrast, the defendants argue that this court determined in the first appeal that the petition contained a claim "arising under" § 116.  Both parties' arguments miss the mark.

It is not clear whether the Federal Circuit concluded that the petition's state-law ownership claim did not require a determination of inventorship under § 116.  The Federal Circuit's transfer order did not explain why it lacked jurisdiction, but the court cited *HIF Bio*, discussed earlier, to support its conclusion.

But even if the Federal Circuit implicitly concluded that the state-law ownership claim did not require the determination of inventorship under § 116, the Federal Circuit did not answer the question presently before us—whether the defendants had an "*objectively reasonable basis*" for concluding that the petition required such a determination.

In this court's prior opinion in this case, we expressly declined to determine whether the petition required a determination of inventorship.[57] Even if portions of our opinion, read charitably in the defendants' favor, might suggest that the petition stated a claim "arising under" § 116, these portions of our opinion were not necessary to the holding.  By concluding that federal

---

[56] 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents . . . .").

[57] *Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 333 (5th Cir. 2014) ("[R]egardless of whether Camsoft asserted a theory of inventorship, removal was improper because district courts have no jurisdiction over an inventorship dispute until the disputed patent has issued.").

No. 15-30133

district courts lack jurisdiction over § 116 claims, we did not need to determine whether the complaint contained a claim "arising under" § 116.

**2**

CamSoft's state-court petition mentioned a pending patent application in two instances. CamSoft alleged:

> Southern [and] Active . . . never notified CamSoft or MacDonald of their purported ownership rights to the System, nor did they notify CamSoft of a patent application for said System. CamSoft did not learn about the patent application until reading about [the application in a motion filed in the Dell suit in September 2009]. Moreover, CamSoft did not learn the extent [of the] claim [by Active's owner] as the inventor of said System until reading his depositions for the first time in September of 2009.

CamSoft also alleged:

> Moreover, it was not until CamSoft filed its [petition to intervene in the Dell suit] that CamSoft even learned of a purported pending patent application relevant to the wireless video surveillance system. Upon information and belief, [Active and Southern] allege sole inventorship in this invention. [Active and Southern's] failure to ever notify . . . CamSoft or MacDonald that [Active and Southern] filed a patent application further constitutes a breach of fiduciary duty and fair dealings.

As we noted in the first appeal, the petition "clearly alleged that [Active or Southern] had tried to patent the surveillance technology and had falsely claimed sole inventorship."[58]

CamSoft correctly notes that the prayer for relief in its state-court petition rested entirely on state-law causes of action. Therefore, the appropriate question is whether CamSoft's ownership claim "necessarily depends on [the] resolution of a substantial question of federal patent law."[59]

---

[58] *Id.* at 334.

[59] *Christianson*, 486 U.S. at 808-09.

Several parts of CamSoft's prayer for relief touch on ownership but do not address *who* owned the intellectual property at issue; rather, they address procedures for establishing ownership and rights related to ownership.[60]

The magistrate judge's report, later adopted without comment by the district court, concluded that CamSoft's claim for ownership was not based on a contract. We agree. Although CamSoft brought a claim for breach of contract, this claim is based on Southern and Active's violation of a non-disclosure provision. The petition does not allege that any specific contractual provision establishes ownership rights in the security camera system.[61]

The magistrate then turned to CamSoft's claim for ownership under articles 513 and 514 of the Louisiana Civil Code. These provisions establish ownership rights over a "thing" made with the "materials and workmanship" of two or more persons.[62] The magistrate observed that CamSoft "has not shown that there is any meaningful way to distinguish among creation, ownership, and inventorship in this case." The magistrate acknowledged that there may be some distinction between state law and federal patent law on this issue, but that CamSoft's efforts to differentiate between state-law "creation" and federal-law "invention" were unpersuasive. The magistrate thus concluded that ownership could not be established without addressing inventorship under federal patent law.

---

[60] *See* LA. CIV. CODE art. 526 (establishing an owner's right to recover his property and obtain judgment recognizing his ownership; *id.* art. 798 (recognizing a right to a proportionate share of products and fruits from co-owned property); *id.* art 803 (addressing the rights of co-owners to use and manage property); *id.* art. 813 (addressing partitions in kind).

[61] *Cf. HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1356-57 (Fed. Cir. 2010) (concluding that there was no § 1138(a) jurisdiction when the complaint alleged that ownership could be established via an implied contract between the parties).

[62] LA. CIV. CODE art. 513; *see also id.* art. 514 (providing further rules on this issue).

No. 15-30133

Assuming *arguendo* that the magistrate's analysis on this point was incorrect, we cannot overturn the district court's denial of costs and attorney's fees on this ground.  As the Supreme Court has recognized, "merely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law."[63]  The Court has also noted that Congress did not "confer a right to remove" with the intention of "discouraging its exercise in all but obvious cases."[64]  The Federal Circuit has held that "the field of federal patent law preempts any state law that purports to define rights based on inventorship."[65]  The concepts of "creation" and "invention" are similar enough to raise a meaningful question of whether the claim under the Louisiana statutes required the resolution of inventorship under federal patent law.  We cannot conclude that the district court abused its discretion in denying costs and attorney's fees based on CamSoft's claim under articles 513 and 514.

Finally, the magistrate concluded that CamSoft's "claim of ownership is not based on any alleged alternative legal theory."  CamSoft argues that its petition "clearly outlined joint venture law as a basis for asserting its . . . ownership rights."

CamSoft's state-court petition states that it formed a joint venture with Active and Southern.  But the petition alleges that CamSoft, Active, and Southern "formed a joint venture for the sale of the wireless video surveillance system designed, developed, and created during the pilot project."  In other words, as the heading of the section alleging the joint venture puts it, the joint venture was formed "After Designing the New Wireless Video Surveillance

---

[63] *Christianson*, 486 U.S. at 809 n.3.

[64] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

[65] *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999).

19

System."   The joint venture appears to be alleged for the purpose of establishing Active's and Southern's fiduciary duties to CamSoft.  To be sure, the petition alleges that Active and Southern breached their fiduciary duties by filing a patent application stating that they were the sole inventors of the surveillance system without informing CamSoft.  This allegation might be read as implicitly suggesting that the joint venture established ownership of the surveillance system.  But the petition leaves it far from clear whether the joint venture agreement, which established the relationship between the parties only after the surveillance system was designed, addressed ownership of the system.

The state-court petition stands in marked contrast to CamSoft's amended complaint, filed after removal to the district court.  CamSoft's amended federal complaint expressly asserts "an ownership interest in the wireless video surveillance system by virtue of its status as an alleged co-joint venturer."  Although this degree of clarity is not necessary to allege ownership based on a joint venture,[66] it shows the tall task that the defendants would have had in discerning that the state-court petition alleged ownership arising out of the joint venture.   Therefore, the defendants had an objectively reasonable basis to conclude that CamSoft's complaint did not allege a legal theory of ownership alternative to the one alleged under articles 513 and 514 of Louisiana's Civil Code.

### E

In sum, we conclude that the district court did not abuse its discretion when it concluded that the defendants were objectively reasonable when they removed the case to federal court.  At the time of removal, it was uncertain

---

[66] *Cf.* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

whether the district court had jurisdiction over claims "arising under" § 116, and it was clear that in some cases, the question of inventorship under § 116 determines ownership.  Furthermore, it was reasonable for the defendants to conclude that CamSoft's claim of ownership necessarily and substantially depended on a determination of inventorship under the federal patent laws, based on the allegations in CamSoft's petition.

## IV

Because we can resolve the question of costs and attorney's fees on the question of objective reasonableness, we need not address the district court's alternative ground for denying CamSoft's motion under § 1447(c): that CamSoft "played a significant role in prolonging the suit's stay in federal court."

\*     \*     \*

For the foregoing reasons, we AFFIRM the judgment of the district court.