In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 22-1087

DONNA SCHUTTE,

*Plaintiff-Appellant,*

*v.*

CIOX HEALTH, LLC and PROHEALTH CARE, INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-00204-LA — **Lynn Adelman**, *Judge.*

———————

ARGUED MARCH 1, 2022 — DECIDED MARCH 16, 2022

———————

Before HAMILTON, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This is an interlocutory appeal under the Class Action Fairness Act (CAFA) from a district court's denial of a motion to remand a putative class action to state court. See 28 U.S.C. § 1453(c). Plaintiff Donna Schutte asks us to order remand of the case to state court for two reasons. First, she argues that the defendants have failed to provide a good-faith estimate that the amount in controversy

exceeds $5 million. Second, she asserts that CAFA's local controversy exception required the district court to decline jurisdiction. Our court has not yet construed the relevant provision of that exception, so we accepted this interlocutory appeal. See, e.g., *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017) (noting that we accepted the appeal to resolve an unsettled CAFA removal question). To comply with the 60-day deadline for decision under § 1453(c)(2), we ordered expedited briefing and argument. We affirm the district court's order denying remand.

I.  *Facts and Procedural History*

Plaintiff Schutte was injured in a car accident in May 2016. After retaining a law firm to seek compensation, she authorized the firm to obtain her health care records. The firm requested electronic—not paper—copies of Schutte's records from defendant ProHealth Care, Inc., a Wisconsin health care provider. ProHealth responded to the request through its agent, defendant Ciox Health, LLC. Ciox produced the electronic copies, but it charged Schutte and her lawyers "Per Page Copy (Paper)" charges of $59.23 and an "Electronic Data Archive Fee" of $2.00.

A Wisconsin statute regulates the fees that providers may charge for the release of medical records. As relevant here, the statute provides that

> a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> > 1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents

per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X–ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

Wis. Stat. § 146.83(3f)(b).

The statute is silent regarding charges for electronic copies of medical records. The Wisconsin Court of Appeals has inferred from that silence that health care providers may not charge *any* fees for electronic copies of medical records. *Banuelos v. University of Wisconsin Hospitals & Clinics Authority*, 966 N.W.2d 78, 87 (Wis. App. 2021) (fees for electronic copies

are not permitted because they are not enumerated in the statute).[1]

Alleging that she should not have been charged fees for electronic copies, Schutte filed this putative class action against Ciox and ProHealth in Wisconsin state court. She proposes to represent a class of patients and others acting for patients who sought medical records from a Wisconsin health care provider and were charged and paid "'paper copies' fees for electronic copies, electronic archive data fees, and other similar impermissible fees." Schutte alleges that the class includes "several thousand persons and entities, who likely possess multiple separate claims." In addition to compensatory damages, her complaint seeks exemplary damages up to $25,000 per claimant, as authorized by Wis. Stat. § 146.84(1)(b) for "knowing and willful" violations.

Ciox removed the action to federal court. The notice of removal asserted that all three of CAFA's jurisdictional requirements are satisfied: (1) Schutte's proposed class has at least 100 members; (2) there is at least minimal diversity of citizenship between Schutte and the defendants; and (3) based on the complaint's allegations, the amount in controversy exceeds $5 million. See 28 U.S.C. § 1332(d). Ciox's notice of removal also asserted that CAFA's local controversy exception—which would require the district court to decline jurisdiction—does not apply because several class actions involving similar factual allegations had been filed against both defendants in the preceding three years. Schutte moved to

---

[1] A petition for review of the decision in *Banuelos* has been filed with the Wisconsin Supreme Court and remains pending as of the date of this decision.

remand to state court on two grounds. First, she argued that Ciox failed to establish that the amount in controversy exceeds $5 million. Second, she asserted that the local controversy exception applies.

The district court rejected both of Schutte's arguments. Judge Adelman concluded that Ciox had put forth a "plausible good faith estimate" that the amount in controversy exceeds $5 million. *Schutte v. Ciox Health, LLC*, — F. Supp.3d —, —, 2021 WL 5754515, at *2 (E.D. Wis. Dec. 3, 2021). He also found that the local controversy exception does not apply because the factual allegations in a recent Montana class action against Ciox were "identical" to Schutte's. *Id.* at *3, citing *Deming v. Ciox Health, LLC*, 475 F. Supp. 3d 1160 (D. Mont. 2020), aff'd mem., No. 20-35744, 2022 WL 605691 (9th Cir. Mar. 1, 2022). The judge denied Schutte's motion to remand.

Schutte then petitioned this court for permission to appeal under 28 U.S.C. § 1453(c), which allows interlocutory review of most orders granting or denying remand in class actions. We granted the petition and now affirm the denial of remand. This putative class action is properly in federal court.

II. *Amount in Controversy*

We begin with CAFA's amount-in-controversy requirement. We review de novo legal questions of subject matter jurisdiction. *Roppo v. Travelers Commercial Insurance Co.*, 869 F.3d 568, 578 (7th Cir. 2017). The party asserting federal jurisdiction has the burden of showing that CAFA's requirements are satisfied. *Id.* Here, the parties agree that the class exceeds 100 members and that there is minimal diversity. See 28 U.S.C. § 1332(d). The disputed question is whether the amount in controversy exceeds $5 million.

Where the amount in controversy is contested, "removal is proper 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Roppo*, 869 F.3d at 579, quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014). The removing party needs to provide only a "good-faith estimate" that is "plausible and adequately supported by the evidence." *Blomberg v. Service Corp. International*, 639 F.3d 761, 763 (7th Cir. 2011).

To satisfy the amount-in-controversy requirement, a removing defendant may rely on the complaint's allegations, the plaintiff's informal estimates, affidavits from employees or experts, or other sources. *Roppo*, 869 F.3d at 579–80. Once the removing party meets its burden, "the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).

In addressing such issues about amounts in controversy, it is critical for courts to focus on the phrase "in controversy" and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction. See *id.*, citing *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) (adopting "legal certainty" standard). Ciox has satisfied the amount-in-controversy requirement through at least two routes: the allegations in the complaint itself and an affidavit from a Ciox executive.

A. *Schutte's Complaint*

First, the allegations in the complaint alone are enough to show plausibly that more than $5 million is in controversy.

Ciox was entitled to take at face value the complaint's allegation of "several thousand" class members, each with "multiple separate claims." See *Roppo*, 869 F.3d at 581 (defendant attempting to satisfy jurisdictional requirements "may rely on the estimate of the class number set forth in the complaint"). Also, it is well-settled that punitive damages, which could be up to $25,000 per claimant here, "factor into the amount-in-controversy calculation." *Id.* at 582; see also *Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co.*, 637 F.3d 827, 831 (7th Cir. 2011) (relying on potential punitive damages to calculate amount in controversy even where plaintiff "did not expressly ask for a punitive award").

Putting these numbers together, 2,000 class members would need to recover an average of only around $2,501 in exemplary damages—to say nothing of compensatory damages—to surpass the $5 million threshold. Or looking at it another way, if each class member's exemplary damages averaged $1,000, a class with only 5,001 members would reach the required total. Many other permutations would push the class over the line, but the point is the same: the complaint's allegations suffice to show that "'a fact-finder *might* conceivably lawfully award' in excess of $5 million dollars." *Roppo*, 869 F.3d at 583, quoting *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016).

Schutte's arguments to the contrary are not persuasive. For one, she suggests that exemplary damages in this case are unlikely to approach the $25,000 maximum. She points out that the compensatory damages are low—her claim is for $61—and the Supreme Court has said that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due

process." *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425 (2003).

These observations fall well short of establishing a "legal certainty" that substantial punitive or exemplary damages could not be awarded here. Even after *State Farm*, we have recognized that a higher punitive damages ratio may be warranted in cases where compensatory damages are too low to provide meaningful deterrence. See *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 674–77 (7th Cir. 2003) (upholding ratio of 37.2 to 1 where compensatory damages were only $5,000 per plaintiff).

In addition, "a reviewing court engaged in determining whether an award of punitive damages is excessive should 'accord "substantial deference" to legislative judgments concerning appropriate sanctions for the conduct at issue.'" *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 583 (1996), quoting *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (O'Connor, J., concurring in part and dissenting in part). Any due-process challenge to a high punitive damages award in this case would have to overcome the statute's express provision that claimants may seek up to $25,000 for "knowing and willful" violations. Wis. Stat. § 146.84(b); see also *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 840 (7th Cir. 2013) (recognizing that statutory cap imposed by Congress "suggests that an award of damages at the capped maximum is not outlandish").

More fundamental, the district court's task in deciding the remand motion was not to predict Schutte's prospects on the merits. What matters is the amount "*in controversy*"—not the amount that plaintiffs are most likely to recover. See, e.g., *Back Doctors*, 637 F.3d at 830 ("[T]he question here is not whether

the class is more likely than not to recover punitive damages, but whether Illinois law disallows such a recovery."); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.").

Schutte also cites Wisconsin cases holding that punitive damages are available only where compensatory damages are awarded. E.g., *Tucker v. Marcus*, 418 N.W.2d 818, 824 (Wis. 1988) ("[W]here there exists a 'cause of action,' but the action is not one for which the recovery of compensatory damages is justified, punitive damages cannot be awarded."). She argues that Ciox has failed "to establish the average or actual overcharges suffered by the Class," so that exemplary damages are "entirely theoretical."

The argument overstates Ciox's burden. To satisfy CAFA's requirements, Ciox did not need to "establish" the class's losses; it needed to provide only a "good faith estimate" that the potential recovery exceeds $5 million. *Roppo*, 869 F.3d at 579; see also *Blomberg*, 639 F.3d at 763 ("The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties."). Nor is Schutte correct to characterize exemplary damages in this case as theoretical. Her complaint alleges that "the defendants intentionally, knowingly, willfully, negligently, and/or otherwise unlawfully imposed fees not allowed by Wis. Stat. § 146.83." Based on the allegedly "knowing and willful violation," she seeks "exemplary damages of not more than $25,000." Schutte put "in controversy" the exemplary damages contemplated by the statute. She cannot avoid federal jurisdiction by trying to retreat from her own allegations.

B.  *Ciox's Declaration*

Even if the allegations in the complaint were not enough, Ciox also submitted a declaration from a senior vice president of operations. The declaration asserted that Ciox had fulfilled about 727,500 relevant requests for medical records in Wisconsin from late January 2015 to late January 2021 (a period based on Ciox's estimate of the applicable statute of limitations). These were requests "made by Wisconsin residents to healthcare providers located in Wisconsin for electronic copies of medical records in which a fee was charged or for copies of medical records in which an electronic delivery and/or archive fee was charged." To reach the $5 million threshold on compensatory damages alone, these requests would need to average only around $6.88 in overcharges. Given that Schutte's claimed compensatory damages were $61, this estimate is also sufficient to meet Ciox's burden.

Schutte argues that the declaration is not sufficient. She says that from 2016 to 2020, requests for records could be priced under either federal law or Wisconsin law, and that only requests in the latter category would be relevant to this action. Since Ciox has not specified how many of the 727,500 requests were priced under Wisconsin law, Schutte argues, the declaration is overinclusive.

The argument does not defeat CAFA jurisdiction. There is at best for Schutte some room to argue about the relevant time for class members' claims. At the risk of digging a little too deeply into the merits at this stage, federal regulations known collectively as the HIPAA Privacy Rule provide that a covered entity fulfilling a request for medical records "may impose a

reasonable, cost-based fee." 45 C.F.R. § 164.524(c)(4) (2020).[2] Another regulation clarifies how this provision interacts with state laws regulating fees: "When a State law provides a limit on the fee that a covered entity may charge for a copy of protected health information, this is relevant in determining whether a covered entity's fee is 'reasonable' under § 164.524(c)(4)." Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules, 78 Fed. Reg. 5566, 5636 (Jan. 25, 2013). If state law limits the permissible charges to 25 cents per page, for example, then the covered entity may not charge more than that amount even if its costs are higher. *Id.* So Wisconsin's prohibition on fees for electronic copies of medical records, see *Banuelos*, 966 N.W.2d at 87, would at least arguably apply to requests that were priced under federal law. This question about the interplay of federal and state limits on record fees need not be resolved on the merits at this stage, however. The question here, we repeat, is the extent of the controversy, not its likely resolution.[3]

---

[2] The relevant regulations refer only to "covered entities," not "business associates," and Ciox falls in the latter category. *Ciox Health, LLC v. Azar*, 435 F. Supp. 3d 30, 39 (D.D.C. 2020). As the *Ciox Health* court observed, however, "HHS's regulations all but ensure that business associates will limit the fees they charge in a manner consistent with HHS's interpretation of the [restrictions imposed by the regulations]. The regulations expressly make covered entities liable for their business associates' violations." *Id.* at 49; see also *id.* at 49–50 (noting that covered entities "have structured their contracts to require their business associates to follow the regulations" and that Ciox's contracts "include provisions requiring Ciox to indemnify the covered entity for any violation … that is attributable to the covered entity for Ciox's actions" (citation omitted)).

[3] Schutte suggests that some charges for electronic records—such as retrieval fees or certification fees—might still be permissible, pointing out that only per-page paper copy charges were directly at issue in *Banuelos*.

Even if we accepted Schutte's theory that we should disregard four of the six years covered by the Ciox declaration, her argument would still fail. Assuming the requests were evenly distributed over the six years, the last two years would have included more than 200,000 requests. Those requests would have needed to average only $25—less than half of Schutte's alleged damages—to surpass the $5 million threshold with compensatory damages alone, and we may not disregard Schutte's demand for exemplary damages. These estimates are also sufficiently plausible to satisfy the amount-in-controversy requirement.

Schutte's other fundamental objection to the declaration is that it offers "no evidence" about the average charge for the 727,500 requests. Again, however, Schutte exaggerates Ciox's burden. All Ciox needed to do at this stage was come forward with a plausible, good-faith estimate that the stakes exceed $5 million, which it did by offering the estimate of 727,500 requests. Even where there is "more that [the defendant] could have done," we accept such an estimate "unless it is legally impossible for the plaintiff to recover that much." *Blomberg*, 639 F.3d at 764 (finding amount-in-controversy requirement satisfied even though defendant could have provided more

See 966 N.W.2d at 80. This argument is another invitation to confuse the merits with the amount that plaintiff has put in controversy by her own allegations. Schutte's complaint defines the class in terms of charges for "'paper copies' fees for electronic copies, electronic archive data fees, *and other similar impermissible fees*." (Emphasis added.) That language puts retrieval fees and certification fees for electronic records "in controversy" regardless of how these issues might ultimately be resolved as a matter of Wisconsin law. See also *id.* at 83 ("[A] health care provider that complies with a request to provide electronic copies of a patient's health care records may not charge a fee for doing so.").

specific estimates about the damages at issue); see also *Brill*, 427 F.3d at 448 ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction."). Defendants have satisfied CAFA's amount-in-controversy requirement.

III. *The Local Controversy Exception*

Schutte's second attempt to win remand is based on CAFA's local controversy exception. Again, our review of legal questions is de novo. *Roppo*, 869 F.3d at 578.

Even where CAFA's jurisdictional requirements are met, the mandatory local controversy exception requires a district court to decline jurisdiction under certain circumstances. 28 U.S.C. § 1332(d)(4)(A).[4] The exception has several requirements, but only one is disputed here. The exception applies only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." § 1332(d)(4)(A)(ii). A plaintiff seeking to remand an action to state court must establish by a preponderance of the evidence that the local controversy exception applies. *Roppo*, 869 F.3d at 584. In the context of a different requirement, we have said that the exception is "narrow." *Id.*[5]

---

[4] We refer to the "mandatory" local controversy exception under § 1332(d)(4)(A) to distinguish it from the discretionary home state exception under § 1332(d)(3).

[5] Cf. *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1163–64 (11th Cir. 2006) (explaining that local controversy exception is narrow and all doubts should be resolved "in favor of exercising [federal] jurisdiction over the

CAFA was the product of years of debate in Congress. The end result was a complex and fragile balance of compromises. See S. Rep. No. 109-14, at 1–3 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 3–5 (describing years of hearings and negotiations before CAFA's enactment in 2005); 151 Cong. Rec. 2071–96 (2005) (remarks of many Senators on final day of debate and vote on passage). When dealing with such a statute, courts should not put a thumb on the scale in either direction but should try to respect the compromises struck in Congress. "Compromises draw unprincipled lines between situations that strike an outside observer as all but identical. The limitation is part of the price of the victory achieved, a concession to opponents who might have been able to delay or block a bill even slightly more favorable to the proponents." *Chicago Professional Sports Ltd. Partnership v. National Basketball Ass'n*, 961 F.2d 667, 671 (7th Cir. 1992); see also *id.* (noting that "[w]hen special interests claim that they have obtained favors from Congress, a court should ask to see the bill of sale");

---

case"), citing S. Rep. No. 109-14, at 39, 42 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 38, 40. The advice to resolve "all doubts" in favor of federal jurisdiction calls for skepticism. It lacks support in the statutory text and is based on language addressing a different CAFA exception in a committee report filed *after* CAFA had been passed in Congress and signed by the President. See *Brill*, 427 F.3d at 448 (criticizing reliance on one passage in the same Senate report because it did "not concern any text in the bill that eventually became law"). A closer look at the Act's passage shows that the local controversy exception was part of a critical compromise reached in the Senate during the prior Congress. See 151 Cong. Rec. 1636–39 (2005) (remarks of Sen. Dodd) (describing addition of local controversy exception as element of key compromise that permitted bipartisan support ultimately leading to passage). We are guided by the text of the critical exception and try to apply it accurately, without trying to aim for a broad or narrow interpretation.

Victoria Nourse, *Misreading Law, Misreading Democracy* 79–83 (2016) (explaining that courts need to pay close attention to compromises needed to win passage of bills, particularly including substitute bills offered to avoid Senate filibuster).

In this case, the district court held that the mandatory local controversy exception does not apply because a class action involving "identical" factual allegations had been filed against Ciox within the relevant three-year period. *Schutte*, 2021 WL 5754515, at *3. In the earlier case, the plaintiffs alleged that Ciox had violated Montana law by charging per-page and other fees for electronic copies of medical records. See *Deming v. Ciox Health, LLC*, 475 F. Supp. 3d 1160, 1162 (D. Mont. 2020), aff'd mem., No. 20-35744, 2022 WL 605691 (9th Cir. Mar. 1, 2022). We agree with the district court that *Deming* involved "the same or similar factual allegations" as Schutte's case and that it was brought "on behalf of the same or other persons." § 1332(d)(4)(A)(ii). Accordingly, *Deming* precludes application of the local controversy exception.[6]

A. *"Similar Factual Allegations"*

First, we agree with the district court that this case and *Deming* involve "the same or similar factual allegations." § 1332(d)(4)(A)(ii). Our court has yet to construe that statutory provision, but the Tenth Circuit addressed its scope in *Dutcher v. Matheson*, 840 F.3d 1183 (10th Cir. 2016). There, purchasers of Utah properties alleged that the defendants had conducted wrongful, non-judicial foreclosures unauthorized by Utah

---

[6] In both the district court and on appeal, Ciox also cited other prior class actions to defeat the local controversy exception. Because *Deming* is sufficiently similar to Schutte's case, we do not address whether any of those other class actions would also be sufficient to deny remand.

law. In a case filed several months earlier, however, another group of plaintiffs also alleged that the defendants had carried out non-judicial foreclosures in Utah. The two complaints alleged, "in nearly identical language, the same acts of wrong-doing by the same defendant." *Id.* at 1191. To avoid federal jurisdiction under CAFA, the plaintiffs relied on the fact that the two cases alleged violations of different statutes. The Tenth Circuit rejected that theory, emphasizing that CAFA's language requires "the same or similar factual allegations," not the same legal theories or causes of action. See *id.* at 1191–92. Because the two cases relied on essentially the same factual allegations, despite the different legal theories, the local controversy exception did not apply.

*Dutcher* is persuasive and helpful here. Schutte relies on the fact that the *Deming* complaint alleged violations of Montana law while her own complaint alleges violations of Wisconsin law. We agree with the Tenth Circuit, however, that differences in the legal theories asserted do not place two complaints with similar factual allegations outside the provision's sweep. See *Dutcher*, 840 F.3d at 1191–92; see generally, e.g., *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020) ("Plaintiffs need only plead facts, not legal theories, in their complaints." (citation omitted)). And here, the factual allegations are nearly identical. The *Deming* plaintiffs alleged that they had to pay per-page charges, electronic data archive fees, and other fees for electronic copies of medical records. Likewise, Schutte alleges that class members had to pay "paper copies" fees, electronic archive data fees, and other fees for electronic copies of medical records. That overlap easily falls within any reasonable definition of "similar factual allegations."

Schutte is correct that *Dutcher* differs from this case in at least one respect. The allegations in both complaints involved unlawful foreclosures on Utah property and different provisions of Utah law, see 840 F.3d at 1191, whereas here Ciox's alleged misconduct occurred in two different states. In Schutte's view, "the fact that the actions concern unlawful charges in different states is enough to differentiate the two."

That difference does not govern application of CAFA's mandatory local controversy exception. Both the *Deming* and *Schutte* complaints assert "the same basis of wrongdoing," *Dutcher*, 840 F.3d at 1191, by Ciox—namely, charging impermissible fees for electronic copies of medical records. If geographic differences could render two otherwise identical complaints dissimilar for CAFA's purposes, then plaintiffs would be able to avoid federal jurisdiction by filing individual actions based on the same kind of misconduct in all fifty states.

There is no basis in the statutory text for that proposed limit, and the text's specific reference to "the same or similar *factual* allegations" weighs heavily against it. § 1332(d)(4)(A)(ii) (emphasis added). As the Senate committee's post-passage report explained, one purpose of that criterion was "to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation." S. Rep. No. 109-14, at 41, as reprinted in 2005 U.S.C.C.A.N. at 39; see also, e.g., *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017) (citing the same Senate report

and noting that "Congress did intend to prevent copycat suits in multiple forums, enabling class actions to be consolidated to promote judicial efficiency."); *Carter v. CIOX Health, LLC*, 260 F. Supp. 3d 277, 285 (W.D.N.Y. 2017) (similar).[7]

Consistent with that reasoning, a number of district courts have rejected Schutte's theory that actions arising in different states cannot involve "similar factual allegations." E.g., *Brown v. Saint-Gobain Performance Plastics Corp.*, Nos. 16-cv-242 & 16-cv-243, 2016 WL 6996136, at *4 (D.N.H. Nov. 30, 2016) (denying remand; factual allegations deemed similar where case involved harm to plaintiffs in New Hampshire, while prior class actions alleged that same pollutant harmed different plaintiffs in New York and Vermont); *Torres v. CleanNet, U.S.A., Inc.*, No. 14-2818, 2014 WL 5591037, at *8–10 (E.D. Pa. Nov. 4, 2014) (denying remand; factual allegations deemed similar where case involved Pennsylvania law and was limited to Pennsylvania plaintiffs, while prior action was brought under Illinois law); *Brook v. UnitedHealth Group Inc.*, No. 06 CV 12954, 2007 WL 2827808, at *4 (S.D.N.Y. Sept. 27, 2007) (denying remand;

---

[7] Unlike the suggestion discussed above in note 5 that all doubts should be resolved in favor of federal jurisdiction, the explanation of the reasons for the statute's "factual allegations" phrasing to allow MDL coordination fits the statutory text and does not try to impose a new substantive rule. We do not mean to imply here that this and similar electronic record fee cases should in fact be consolidated through the MDL process. We do not know enough about those cases, the parties have not been heard on that significant procedural decision, and that would not be our decision in any event. Our broader point is only that Congress drafted the local controversy exception so as to enable the Judicial Panel on Multidistrict Litigation to consolidate similar class actions arising under state law in multiple states, using the Panel's usual standards and judgments. The Senate report makes explicit that consequence of the statutory language.

"Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by-state basis, and then proceed to file virtually identical class action complaints in various state courts.").

Schutte seeks support from two district court cases, but both are distinguishable. First, in *Anderson v. Hackett*, 646 F. Supp. 2d 1041 (S.D. Ill. 2009), the court granted remand under the local controversy exception where a prior class action in New York had alleged that Monsanto should not have produced and distributed certain products. Those allegations were not sufficiently similar to the *Anderson* plaintiffs' claims that Monsanto should have used greater care in producing and handling its products in Illinois: "Boiled down, the [prior] action says, 'Don't produce;' the instant action says, 'Don't spill.'" *Id.* at 1051.

The *Anderson* court went on to say that even if the defendants had contaminated the environment in the same way in both cases, "the fact that the actions concern the contamination of different environments is enough to differentiate the two." 646 F. Supp. 2d at 1051. Schutte takes this dictum to mean that geography should always be a differentiating factor. We do not read it nearly so broadly. Applying the local controversy exception to cases alleging pollution of specific properties in different states may pose significant challenges. Compare, e.g., *Anderson*, with *Brown*, 2016 WL 6996136, at *4 (denying remand where plaintiffs in prior actions also alleged that defendant had released same pollutant in their own states). But those challenges are not present in a case like this one, where only the plaintiffs themselves—rather than any real property—are in different states.

Second, Schutte relies on *Rasberry v. Capitol County Mutual Fire Insurance Co.*, 609 F. Supp. 2d 594 (E.D. Tex. 2009). The proposed class there sought declaratory and injunctive relief against an insurer for its use of unlicensed adjusters to calculate insurance claims. By contrast, the plaintiffs in a prior class action had requested money damages based on the insurer's refusal to include contractor overhead and profit when calculating the value of their claims. Although both cases involved insurance claims after the same hurricane, the court concluded that the "essential contours" of the actions were "wholly dissimilar." *Id.* at 605. One group of plaintiffs wanted only equitable relief because of who was calculating their claims. The other group wanted damages because their claims were being undervalued. No such differences are present in this case, where both Schutte and the *Deming* plaintiffs primarily seek money damages because Ciox charged them impermissible fees for electronic copies of medical records.

While the similarities between Schutte's allegations and those in *Deming* are quite clear, harder cases are sure to arise. For instance, Ciox acknowledged at oral argument that the inquiry would be more difficult here if a prior class action had alleged that plaintiffs were charged for the wrong number of pages or that the records were sent to the wrong recipients. In other words, not every prior class action involving requests for medical records from Ciox would necessarily be similar to Schutte's allegations. As the *Rasberry* court observed, the local controversy exception generally will not be defeated where the relevant actions are similar only in "incidental respects, such as arising out of the same event and including a common defendant." 609 F. Supp. 2d at 605. Here, however, the nearly identical nature of the factual allegations makes clear that

Schutte's case and *Deming* are factually similar for CAFA's purposes.

B.  *"On Behalf Of"*

Schutte's other textual argument is also not persuasive. Recall that the provision at issue applies if a prior class action was brought "on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). According to Schutte, this language necessarily implies some limitation on the prior class actions. She contends the phrase must require that there be "some connection between the two class actions." The first problem with this argument is that Schutte offers no meaningful guidance about what sort of connection should suffice. Nor does she offer a basis in the statutory text or even the history of CAFA's enactment for answering that question. The "some connection" standard would have no basis in law and would be impossible to apply fairly. Cf. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493–95 (1985) (rejecting similarly elusive and amorphous proposal to require "racketeering injury" under civil RICO statute).

Still, Schutte argues, if some connection between the classes were not required, the "on behalf of the same or other persons" language would be rendered surplusage because all class actions are, by definition, brought on behalf of other persons. See Fed. R. Civ. P. 23(a); 28 U.S.C. § 1332(d)(1)(B) (defining "class action" for CAFA); see generally, e.g., *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion) (relying on canon against surplusage to avoid rendering superfluous an entire provision of the relevant statute).

This surplusage argument is not persuasive. As this court has recognized, "the presence of some redundance is rarely

fatal on its own to a statutory reading." *White v. United Airlines, Inc.*, 987 F.3d 616, 622 (7th Cir. 2021); see also *Territory of Guam v. United States*, 141 S. Ct. 1608, 1615 (2021) (rejecting effort to try to "avoid surplusage at all costs" (citation omitted)); *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."). An important empirical study found that drafters of legislation often "intentionally err on the side of redundancy" as a precautionary measure and as a response to political demands. Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stan. L. Rev. 901, 934 (2013); see also Nourse, *Misreading Law*, at 92–93 (explaining how Senate rules encourage redundant statutory language); Matthew R. Christiansen & William N. Eskridge, Jr., *Congressional Overrides of Supreme Court Statutory Interpretation Decisions, 1967–2011*, 92 Tex. L. Rev. 1317, 1448, 1469 (2014) (citing evidence that "repetition (i.e., surplusage) is typically what supporting institutions and groups want from the legislative process" and arguing that the anti-surplusage canon is "antidemocratic in a serious way"); William N. Eskridge, Jr., *The New Textualism and Normative Canons*, 113 Colum. L. Rev. 531, 579 (2013) (book review) ("[T]he rule against surplusage ... is especially problematic because the legislative process operates under the opposite assumption and so that canon will often thwart legislative deals rather than enforce them."); Brett M. Kavanaugh, *The Courts and the Administrative State*, 64 Case W. Rsrv. L. Rev. 711, 718 (2014) (observing that "members of Congress often want to be redundant" because they want "to make doubly sure about things," so courts "should be more careful" in applying the canon); Richard A. Posner, *Statutory*

*Interpretation—in the Classroom and in the Courtroom*, 50 U. Chi. L. Rev. 800, 812 (1983) ("[A] statute that is the product of compromise may contain redundant language as a by-product of the strains of the negotiating process.").

This case illustrates the limits of the anti-surplusage canon. Schutte is correct that class actions are, by definition, brought on behalf of other persons. See § 1332(d)(1)(B) (defining a class action as any civil action filed under a statute or rule "authorizing an action to be brought by 1 or more representative persons"). But suppose that Congress had omitted the "on behalf of" language from the local controversy exception. The exception would then apply only if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants." In applying that language, courts and litigants might reasonably wonder whether a prior class action needed to involve the same class representatives or members to qualify—especially given the express requirement that it involve at least one of the same defendants.

That issue would have been easy to anticipate, and Congress chose statutory language that made its meaning crystal clear: a prior class action that is factually similar qualifies regardless of whether it was brought "on behalf of the same *or* other persons." § 1332(d)(4)(A)(ii) (emphasis added); see also *Brown*, 2016 WL 6996136, at *3 n.13 ("If serving no other purpose, this language emphasizes that an action need not be

filed by or on behalf of the same purported class of plaintiffs to meet the criteria set forth in this section.").[8]

The practical implications of our reading of the mandatory local controversy exception are evident. A series of class actions making similar factual allegations against a defendant in different states can fall outside the exception, allowing removal and perhaps making possible pretrial coordination under the federal multidistrict litigation process. See 28 U.S.C. § 1407. The first such class action would not be removable, for there would be no *prior* class action. But as noted, CAFA reflects a complex and delicate balance of compromises, and we do our best to enforce it as written.

The district court's order denying remand is AFFIRMED.

---

[8] If the text of the provision were not considered sufficiently clear, we could look to the Senate committee's post-passage report on the final bill for further confirmation. See *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 681 (7th Cir. 2006) (addressing CAFA's legislative history "for the sake of completeness"); see also *Brill*, 427 F.3d at 448 ("When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur."). The report said: "The inquiry is whether similar factual allegations have been made … *regardless of* whether the same causes of action were asserted or *whether the purported plaintiff classes were the same (or even overlapped in significant respects)*." S. Rep. No. 109-14, at 41, as reprinted in 2005 U.S.C.C.A.N. at 39 (emphases added). Unlike the advice discussed above in note 5, that statement fits comfortably with the statutory language. It weighs further against Schutte's contention that some connection between the two classes is required.